STATE v. JOHN EDWARD GEORGE.

(Filed 27 September, 1967.)

**1. Criminal Law §§ 34, 89, 169—**

In a prosecution for armed robbery, testimony elicited on cross-examination of defendant that he had been arrested for a similar offense in another state is not prejudicial, when defendant had testified earlier on direct examination as to the prior offense, and when the questioning was for the purpose of impeaching defendant's credibility as a witness.

**2. Criminal Law § 8—**

Where a statute provides for the dismissal of charges against a defendant if he is not tried within a specified time, the defendant is not entitled to relief when a trial is held within the statutory time but results in a mistrial upon the failure of the jury to reach a verdict, since, under such circumstances the State is not responsible for the delay.

**3. Same— Where trial within period prescribed by Interstate Agreement on Detainers Act results in mistrial, defendant is not entitled to discharge at later trial had with due diligence.**

Defendant's trial in this State upon his return under the Interstate Agreement on Detainers, G.S. 148-89, resulted in a mistrial. At the second trial defendant's motion for change of venue was granted, and on the following day he was removed to a third county pursuant to a writ of *habeas corpus ad prosequendum.* Thereafter, defendant moved that the charge against him be dismissed because more than 180 days had elapsed since he had been returned to the State. *Held:* The first trial having been held within the 180 day period, the motion was correctly denied, the delays subsequent thereto being in the nature of reasonable continuances and the ruling of the lower court that the State had used due diligence in bringing the case to trial is affirmed.

**4. Same—**

G.S. 148-89, Art. IV(c), requiring a prisoner to be tried within 120 days after the solicitor requests his return to this State, does not apply when the prisoner is returned at his own request. G.S. 148-89, Art. III.

APPEAL by defendant from *McLean, J.,* 30 January 1967, Regular Criminal Session of GASTON Superior Court.

The defendant was charged with violating G.S. 14-87. The Bill of Indictment alleges that on the 9th day of September 1963 with the threatened use of a pistol whereby the life of L. W. Greene, Jr. was endangered, he robbed Greene of $623.00 belonging to Carolina Finance Company (Greene being the manager of the company).

From the record it appears that the defendant was not immediately apprehended, and that on 28 April, 1964 he began service in the California State Prison at San Quentin of a term of five years to life imprisonment upon a charge of armed robbery in California in December 1963, to which the defendant plead guilty.

On 15 June 1966 the defendant wrote a letter to the Governor of California in which he stated that North Carolina had placed a detainer against him upon the charge of robbing Carolina Finance Company; that he was not guilty of the offense, and that pursuant to the "Interstate Agreement on Detainers" (G.S. 148-89), he wished to be brought back to North Carolina to stand trial on the charge. On 11 July 1966, he was surrendered to the North Carolina authorities and arrived in Charlotte on 16 July 1966. On 15 August the defendant was placed on trial in Charlotte, and after two and a half days a mistrial was declared because the jury could not agree upon a verdict. On 3 October 1966 his case was again called for trial at which time the defendant moved for a change of venue from Mecklenburg to Gaston County, and the motion was allowed. On the following day the defendant was delivered to the authorities of New Hanover County pursuant to a writ of *habeas corpus ad prosequendum* signed by Hon. Henry L. Stevens, Jr., Judge Presiding in New Hanover County. He was kept in Wilmington until the early part of December at which time he was returned to Mecklenburg County. On 2 February 1967, the defendant moved that he be discharged because he had not been brought to trial within one hundred eighty (180) days from the date of his request for a trial in violation of G.S. 148-89, Article III (a), and also that he had not been tried within one hundred twenty (120) days after his arrival in North Carolina as required by G.S. 148-89, Article IV (c). The Presiding Judge made full findings of facts, found that "the State has used due diligence in the trial, or attempted trial, of the defendant" and denied his motion. On 8 February 1967, the trial of the case began, which lasted some three days and resulted in the defendant's conviction.

Since the defendant's primary contention is that he is entitled to release upon the grounds that he was not tried within the time set forth in the above statutes, we find it unnecessary to go into a detailed statement of the evidence. As a brief synopsis of it, it may be said that the State's evidence tended to show that on 9 September

1963 the defendant went to the offices of Carolina Finance Company in Charlotte and, with a pistol, forced L. W. Greene, Jr., the manager of the company, to turn over all the cash on hand, which amounted to $623.00. He was definitely identified by Mr. Greene and two other employees of the company, as well as a customer who was present.

The defendant denied his guilt and offered as an alibi that his neck had been broken in an automobile wreck in Wilmington on 3 September 1963, and he had been required to wear a neck brace at all times for the next several weeks; that on the date in question he was wearing the brace; that he could not get around by himself; that he didn't know for sure where he was on 9 September but that wherever he was he was wearing the brace. He offered the evidence of the parents of the young lady whom he was dating and of two other witnesses, whose testimony was that at all times and for many weeks following 3 September the defendant wore the neck brace; that he could not get along without it, could not get around by himself, and that he wore it so much that his neck had become chafed and sore.

In rebuttal, the State offered the testimony of Mrs Howard Stephens who said that her husband was the manager of the Holiday Inn on Wilkinson Boulevard between Belmont and Charlotte; that he (George) stayed at the Inn for two or three days about the 8th or 9th of September; that he had on a neck brace part of that time but not all of that time. Mrs. Betty Goodwin testified that she was working at the Holiday Inn at the time and saw the defendant "with this brace and without the brace"; that she asked him "why he could be without the brace and he said that his doctor had told him that he could take it off for a while, but if his neck or his head got tired to put the brace back on. . . . I understood that if a person's neck was broken, they had to wear the brace . . . (H)e said, 'My doctor told me that I could take my brace off at different times,' or that he could take it off and if his neck got tired, to put the brace back on then."

The jury returned a verdict of guilty, and the Court ordered George imprisoned for not less than twelve (12) nor more than fifteen (15) years, from which the defendant appealed.

*T. O. Stennett, Attorney for defendant appellant.*

*T. W. Bruton, Attorney General, and James F. Bullock, Deputy Attorney General, for the State.*

PLESS, J.  Upon cross examination, the Solicitor asked the defendant about his neck brace when he was arrested in California in

the early part of December 1963 and charged with armed robbery. It appears that the Solicitor's object was to show that at that time he was not using the neck brace, but the defendant contends that to permit the Solicitor to ask questions which related to the California charge was prejudicial error. We cannot so hold. In the first place, the defendant had testified earlier that he was guilty of armed robbery and that he had plead guilty in the California courts. Also, in two motions he had filed he referred to his imprisonment in California on this charge; therefore, information about it was already before the jury, and no prejudice could result from the questions asked. Further, the questions were competent for the purpose of impeachment. The California charge was the same kind as the one for which the defendant was then being tried, and the questions were competent for the purpose of impeaching him. *State v. Broom*, 222 N.C. 324, 22 S.E. 2d 926. There it is said that the solicitor may ask the defendant, when on the stand as a witness, questions about collateral matters, including charges of other criminal offenses and degrading actions, for the purpose of impeaching his credibility. There is no merit in these exceptions, and they are overruled.

The defendant's principal contention is that the State did not comply with G.S. 148-89, Article III (a) which provides:

> "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

It is to be noted that the statute requires that the defendant *be brought to trial* within one hundred eighty (180) days after he has given the appropriate notice to the solicitor. He was actually brought to trial twice within less than four months. The first trial occurred the week of 15 August 1966 and resulted in a mistrial. The State, of course, cannot control the fact that a jury is unable to agree upon a verdict and is not chargeable with responsibility under these condi-

tions. In 22A C.J.S. 60, Criminal Law, § 472(3), it is said: "If accused is tried within the statutory time . . . and such trial results in a mistrial, as when the jury failed to agree, accused cannot ignore the mistrial and claim a discharge or dismissal upon the ground that he was not tried within the time fixed by the statute providing for that relief. . . . (W)hile accused is entitled to a speedy retrial by virtue of the constitutional or statutory guaranty of a speedy trial, the statute providing for a discharge or dismissal if accused is not tried within a stated time does not govern the time within which a retrial must be had, and the time for a retrial is a matter of judicial discretion."

On 3 October 1966, the State commenced the second trial of the defendant, this being less than three months after his return to the State. The trial was not had because at that time the defendant moved for a change of venue from Mecklenburg to Gaston County. His motion was allowed. Had he not made it, or had it been denied, the case would probably have been determined at that time; and the defendant cannot complain of delay in his trial when caused by his own motion.

The next day, upon the writ of Superior Court Judge Henry L. Stevens, Jr., the Mecklenburg officers surrendered the defendant to the authorities of New Hanover County; he was taken to Wilmington and remained there for some two months without being tried, at the end of which time he was returned to Mecklenburg County. The record does not reveal the nature or seriousness of the charges in New Hanover County, nor why he was not tried there, but Judge Stevens' order had to be obeyed by the Mecklenburg authorities, and the solicitor was powerless to start another trial in Gaston County until the defendant's return in December.

Some sixty days later the defendant was placed on trial in Gaston County after the defendant had sought his release because of the delay in trying him. This later period could not be held to be an unreasonable delay for several reasons. First, it is generally known that the courts are usually closed for two weeks or more in December on account of Christmas; and we must also recognize that in both Mecklenburg and Gaston Counties the criminal dockets are congested, and that regardless of the efforts of the judge and the solicitor, it is impossible to grant every defendant an immediate trial. The following quotations, omitting citations, from the well-written opinion of Sharp, J., in *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309, are pertinent:

> "*Speedy* is a word of indefinite meaning . . . Neither the constitution nor the legislature has attempted to fix the exact time within which a trial must be had. 'Whether a speedy trial

is afforded must be determined in the light of the circumstances of each particular case. . . . "Four factors are relevant to a consideration of whether denial of a speedy trial assumes due process proportions: the length of the delay, the reason for the delay, the prejudice to defendant, and waiver by defendant. . . . These factors are to be considered together because they are interrelated. . . ." '

"The burden is on the accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or wilfulness of the State's prosecution. The right to a speedy trial is not violated by unavoidable delay nor by delays caused or requested by defendants. . . . (T)he right to a speedy trial 'is not designed as a sword for defendant's escape but rather as a shield for his protection.'

"We must note . . . that the ever-increasing number of criminal cases is putting a heavy strain upon speedy trial. The flood of post conviction petitions . . . and the retrials which some of the petitions . . . have necessitated, have further burdened courts which were even then struggling to keep abreast of congested dockets."

Also, in 21 Am. Jur. 2d, Criminal Law, § 251, *et seq.*, we find the following excerpts:

"The burden is on the accused who asserts denial of the constitutional right to speedy trial to show that the delay was the fault of the state. . . . (T)he presumption is that any continuance was for a lawful cause. . . . A delay made necessary by the usual and ordinary procedure provided by law in criminal cases is of course permissible. And the right to speedy trial is not violated by unavoidable delays. . . . Docket congestion has been held a sufficient ground for delay.

"A defendant's rights . . . are not violated by a delay caused by his own condition or conduct. . . . An accused cannot take advantage of a delay for which he was responsible, whether caused by action or inaction on his part.

"In many jurisdictions, the right to speedy trial is waived unless defendant demands trial, . . . or makes some effort to secure a speedier trial than the State accorded him."

The statute under which the defendant makes his claim provides "that for good cause shown . . . the court having jurisdiction of the matter may grant any necessary or reasonable continuance." The record does not show that the defendant moved for a trial at any time. His motion for release was the first time the court had occa-

BANK *v.* CORBETT.

sion to rule upon the delay; and upon Judge McLean's finding "that the State has used due diligence in the trial, or attempted trial," together with the other facts found, which are stated in this opinion, we hold that to be the equivalent of granting a reasonable continuance.

The defendant also invokes the failure of the Solicitor to try him within one hundred twenty (120) days after his arrival in North Carolina as is required in G.S. 148-89, Article IV. However, this statute is not applicable here, since it can be invoked only when the prisoner has been returned to the State at the request of the solicitor. The defendant does not make the latter contention, and the record clearly shows that the defendant was brought back to North Carolina upon his own request and not that of the solicitor.

There was ample evidence to submit to the jury and to sustain a verdict of guilty. The defendant brings forth no exceptions to the sufficiency of the evidence nor to the charge of the Court. For the reasons stated, we are of the opinion that Judge McLean was correct in denying defendant's motion to dismiss, and that in his trial there was

No error.