## STATE v. TOMMY McNAIR.

(Filed 29 November, 1967.)

**1. Criminal Law § 106—**

Although the jury should receive and act upon such testimony with caution, the unsupported testimony of an accomplice is sufficient to sustain a conviction if it satisfies the jury beyond a reasonable doubt of the guilt of the accused.

**2. Criminal Law § 9—**

Where two or more persons aid and abet each other in the commission of a crime, all being present, each is a principal and equally guilty, regardless of any previous confederation or design.

**3. Robbery § 4—**

Evidence of the State tending to show that the defendant was present with two other people when they picked up a soldier and drove him to a deserted place where they all proceeded to beat him, and that the defendant shared in the division of money found in the soldier's wallet, *held* sufficient to be submitted to the jury on the issue of defendant's guilt of common law robbery, despite defendant's denial that he participated either in the planning or in the perpetration of the offense.

**4. Criminal Law § 158—**

Where the charge of the court is not set out in the record, it is presumed that the jury was correctly instructed on the law arising out of the evidence.

**5. Criminal Law § 169—**

A question propounded by the State to the defendant on cross-examination as to whether the defendant had been indicted for the larceny of an automobile, *held* not prejudicial in view of the defendant's unequivocal negative answer.

**6. Same—**

While ordinarily the *quantum* of punishment imposed upon the conviction of another offense is not admissible for purposes of impeachment, there was no prejudicial error in this case in allowing the State to show that the defendant had received a probationary sentence of eighteen months to an offense to which he had pleaded guilty, since such a sentence tended to place defendant in a more favorable light with regard to that particular offense.

APPEAL by defendant from *May, Special Judge,* June 26, 1967 Mixed Session of CUMBERLAND.

Defendant was indicted in a bill charging Tommy McNair, Robert Henry Cromedy and Raymond Cox with the armed robbery, as defined in G.S. 14-87, of one Mark Edwards on February 28, 1967.

Tommy McNair (18), an indigent, represented by W. Ritchie Smith, Jr., Esq., his court-appointed counsel, pleaded not guilty. In

his trial at said June 26, 1967 Session, Robert Henry Cromedy (19) and Raymond Cox (20) testified as witnesses for the State. They were then serving prison sentences, Cromedy at Harnett County Youth Center and Cox at Polk Youth Center. Prior to said June 26, 1967 Session, Cromedy and Cox had pleaded guilty to common law robbery; and each was then serving the sentence the court had pronounced on said plea.

Evidence was offered by the State and by defendant.

The State's evidence, summarized except where quoted, tends to show the facts narrated below.

McNair, Cromedy and Cox got together in a poolroom in Fayetteville, N. C., during the afternoon of February 28, 1967. They left about 8:00 p.m. in Cox's car. Cox testified that before they left the poolroom they "talked about what (they) were going to do" and "all three agreed that (they) needed some money as (they) didn't have any money." They "rode around trying to spot a soldier hitchhiking to pick up." On two occasions, they picked up a soldier, took him to Fort Bragg, but made no attempt to rob him. During this period, McNair, Cromedy and Cox had drinks of whiskey and beer. The third soldier to whom they offered a ride was Mark Edwards. Cox was driving. McNair and Cromedy were on the back seat. Edwards accepted their invitation, got in the car and sat on the front seat next to Cox. Cox drove to an unlighted place on a dirt road and stopped. McNair, pretending he was sick, got out and Cox joined him at the back of the car. McNair asked if Cox had any weapons and was informed that an iron lug wrench, about two feet long, was the only weapon he had. Following their conversation at the back of Cox's car, McNair went to the driver's side of the car and "leaned into the car with his left hand on the steering wheel and the tire tool in his right hand on the back of the front seat." Cox, on the right side of the front seat, touched Edwards on the shoulder; and when Edwards turned around Cox hit him in the jaw. From the back seat of the car, Cromedy grabbed Edwards under the chin with his right hand. McNair was standing at or near the steering wheel on the left side of the car. Under these circumstances, Cox took the wallet from Edward's pocket and removed the money. Observing the lights of an approaching car, both McNair and Cox got back in the car. McNair "got under the steering wheel and drove down to the hard surfaced road." There, Edwards was put out of the car. McNair, Cromedy and Cox returned to the poolroom and there Cox made a three-way division of $42.00, giving McNair $14.00, Cromedy $14.00 and retaining the balance.

Defendant testified in substance that he got with Cromedy and

Cox in the poolroom and later rode with them. He denied there was any discussion of a proposal to rob a hitchhiking soldier. He testified their purpose was simply to pick up a soldier with the expectation of receiving thirty cents or thereabouts for transporting him to Fort Bragg. He testified he was in fact sick on account of having imbibed whiskey and beer; and that he got out and went to the back of the car because he was sick. He testified he had the lug wrench in his hand because Cox had told him that Edwards had a knife; and that, although he had the lug wrench in his right hand as he approached the left side of Cox's car, he did not use it or display it, but rather held it and later placed it on the floor behind the front seat. He testified he drove the car a short distance from the scene of the alleged robbery simply because it was blocking the road and had to be moved. He admitted that he received $14.00 from Cox but denied having participated either in the planning or in the perpetration of the alleged robbery.

It is noted that Mark Edwards, the victim of the alleged robbery was "separated from the service" prior to the June 26, 1967 Session and did not testify.

The jury found Tommy McNair, referred to hereafter as defendant, guilty of common law robbery; and the court pronounced judgment that defendant "be confined in the State's Prison for a term of Ten Years and assigned to work under the Supervision of the State Prison Department." Defendant excepted and appealed.

*Attorney General Bruton and Staff Attorney Vanore for the State.*

*W. Ritchie Smith, Jr., for defendant appellant.*

PER CURIAM. "It is well settled in this jurisdiction that although the jury should receive and act upon such testimony with caution, the unsupported testimony of an accomplice is sufficient to sustain a conviction if it satisfies the jury beyond a reasonable doubt of the guilt of the accused." *State v. Tilley,* 239 N.C. 245, 249, 79 S.E. 2d 473, 476, and cases cited; *State v. Saunders,* 245 N.C. 338, 342, 95 S.E. 2d 876, 879; *State v. Terrell,* 256 N.C. 232, 236, 123 S.E. 2d 469, 472. Too, "(i)t is thoroughly established law in North Carolina that without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty." *State v. Spencer,* 239 N.C. 604, 611, 80 S.E. 2d 670, 675, and cases cited; *State v. Peeden,* 253 N.C. 562, 564, 117 S.E. 2d 398, 400.

Applying the legal principles stated above, there was evidence which, when considered in the light most favorable to the State, is sufficient to show defendant was an active participant in the robbery of Mark Edwards. It was amply sufficient to require submission to the jury and to support defendant's conviction of common law robbery. Hence, Assignment of Error No. 1 based on Exception No. 1, directed to the court's refusal to allow defendant's motion as in case of nonsuit, is without merit.

The charge of the trial court was not included in the record on appeal. Hence, it is presumed the jury was instructed correctly on every principle of law applicable to the facts. *State v. Strickland*, 254 N.C. 658, 119 S.E. 2d 781; *State v. Hoover*, 252 N.C. 133, 140-141, 113 S.E. 2d 281, 287, and cases cited therein.

Defendant's Assignments of Error Nos. 2, 3 and 4, based on Exceptions Nos. 2, 3 and 4, refer to the portion of the record quoted below.

"Q. How many times have you been indicted by the grand jury for larceny?

"OBJECTION BY THE DEFENDANT　OVERRULED.

"A. Never.

"Q. In May of 1966, were you indicted by the grand jury for larceny of a car and they let you plead guilty to the misdemeanor, isn't that right?

"OBJECTION BY DEFENDANT　OVERRULED.

"A. Say what, now?

"Q. In May, 1966, May 25th, they let you plead . . .

"A. They let me plead guilty to larceny?

"Q. To the unauthorized use or misdemeanor"

"A. That is the only one.

EXCEPTION No. 2.

"Q. And gave you eighteen months' sentence and put you on probation and you are on probation now?

"OBJECTION BY DEFENDANT　OVERRULED.

"A. That is correct.

EXCEPTION No. 3.

"Q. Then you were on probation at the time this thing happened?

"A. That is right.

EXCEPTION No. 4.

"Q. And in June of 1966 you were indicted by the grand jury for larceny of an automobile?

"OBJECTION BY DEFENDANT　OVERRULED.

"A. No sir."

In Assignment of Error No. 2 based on Exception No. 2 defendant asserts the court erred in allowing the State to show, on cross-examination of defendant, "that the defendant had been previously indicted by the grand jury for larceny of a car when the evidence showed the defendant was never convicted of that offense." On this appeal, we need not reconsider whether the State should be permitted to cross-examine a defendant, for purposes of impeachment, with reference to whether he had been *indicted* for a specified criminal offense. See Stansbury, North Carolina Evidence, Second Edition, § 112, p. 255. Here, defendant testified he *had not been indicted* for larceny. In view of defendant's unequivocal negative answer, the solicitor's question cannot be deemed prejudicial to defendant.

In Assignments of Error Nos. 3 and 4, based on Exceptions Nos. 3 and 4, defendant asserts the court erred in allowing the State to introduce evidence that defendant had been given a sentence of eighteen months and was on probation at the time the alleged offense for which he was being tried was committed. It was permissible for the State to elicit on cross-examination of defendant, for purposes of impeachment, that defendant had pleaded guilty to a specific criminal offense, to wit, a misdemeanor. Stansbury, *op. cit.*, § 112, p. 254-255. Ordinarily the *quantum* of punishment imposed upon conviction or a plea of guilty of another criminal offense is not admissible for purposes of impeachment. However, the fact the court saw fit to pronounce a probationary judgment would seem to put defendant in a more favorable light with reference to the criminal offense to which he had pleaded guilty. Under these circumstances, the admission of this evidence cannot be considered prejudicial error.

Having reached the conclusion that the assignments set forth by defendant and discussed in his brief do not disclose prejudicial error, the verdict and judgment will not be disturbed.

No error.