STATE OF NORTH CAROLINA v. DWIGHT H. WILLIAMS

No. 23

(Filed 15 December 1971)

1. Criminal Law § 166— the brief — abandonment of assignments of error

Assignments of error not discussed in defendant's brief are deemed abandoned.

2. Criminal Law § 66— identification of defendant — voir dire hearing

The voir dire hearing to determine the admissibility of identification testimony should be conducted before such testimony is admitted in evidence.

3. Criminal Law § 66; Constitutional Law § 32— in-custody lineup — defendant's right to counsel

The in-custody lineup being a critical stage, the accused person must be advised, not vaguely of "rights," but specifically of the right to counsel (including the appointment of counsel in the event of indigency) and of his right to the presence of his counsel when the lineup is conducted.

4. Criminal Law § 66— identification of defendant — illegality of police lineup — right to counsel — award of new trial

A defendant accused of armed robbery is awarded a new trial on the grounds that the police identification lineup was illegal and that the victim's in-court identification of the defendant, which was based on the lineup, was consequently inadmissible, where there was no evidence (1) that the defendant had been advised by the police of his right to have an attorney present at the lineup or (2) that the defendant had voluntarily waived the right to have an attorney present.

5. Criminal Law §§ 86, 89; Witnesses § 6— impeachment of witnesses — evidence that witness is under indictment for other offenses

For purposes of impeachment, a witness, including the defendant in a criminal case, may not be cross-examined as to whether he has been indicted or is under indictment for a criminal offense other than that for which he is then on trial.

6. Criminal Law §§ 86; 89; Witnesses § 6— impeachment of witnesses — evidence that witness has been accused of other crimes

For purposes of impeachment, a witness, including the defendant in a criminal case, may not be cross-examined as to whether he has been accused, either informally or by affidavit on which a warrant is issued, of a criminal offense unrelated to the case on trial, nor cross-examined as to whether he has been arrested for such unrelated criminal offense.

7. Indictment and Warrant § 7— definition of indictment

A bill of indictment is a written accusation which charges a named person with a specific criminal offense.

8. **Criminal Law § 86— impeachment of defendant — evidence of other indictments — new trial**

The circumstances of the particular case will determine whether defendant will be awarded a new trial for having had to answer on cross-examination that he is currently under indictment for other crimes.

9. **Criminal Law § 86— impeachment of defendant — evidence of other indictments — new trial**

In a prosecution in New Hanover County for armed robbery, it was prejudicial error for the solicitor to have elicited from defendant that he was also under indictment for armed robberies in Onslow, Wayne, and possibly Lenoir Counties.

Justice HIGGINS dissenting.

APPEAL by defendant from *Cowper, J.,* June 9, 1970 Session of NEW HANOVER Superior Court, transferred for initial appellate review by the Supreme Court under general order of July 31, 1970, entered pursuant to G.S. 7A-31(b)(4).

Defendant was indicted for the robbery of Jackie Horne with a dangerous weapon, to wit, a pistol, in violation of G.S. 14-87.

The State's case is based on the testimony of Jackie Horne, age 26, who, on the night of November 16, 1968, was in charge of Direct Oil Company's Fourth Street filling station in Wilmington. Horne testified that, between eight and nine o'clock, defendant walked in the door of the station, "put the gun on [him] and said he wanted [his] money"; that a larger man without a gun entered the side door; that Horne told defendant the money was in his pocket; that defendant then took the money from Horne's pocket, $45.00, the property of Direct Oil Company; that Horne crossed the street between the two robbers; that when they reached the corner Horne turned to the left and the robbers went straight "down the hill"; and that, soon thereafter, Horne returned to the station and "called the police."

Horne also testified on *voir dire* and at trial concerning an in-custody lineup in which he identified defendant as the man who had robbed him at gunpoint.

Defendant's evidence consisted of his own testimony. He testified he was a member of the Marine Corps, having the rank of Corporal E-4; that he had been in the Marine Corps for approximately six years and had "never had any disciplinary

State v. Williams

action taken against [him]"; that he had never been convicted of anything in his life; that about two months before November 16, 1968, he had re-enlisted and had gotten a re-enlistment bonus of $3,000.00; that his pay was $358.00 a month; that he was married and lived in Wilmington, North Carolina, at 904 South Fifteenth Street, where he spent the nights when not on duty; that he did not rob Horne; that he had never seen Horne except when he testified in the district court; that he did not even know where the Direct Oil Company filling station was; and that Horne had "picked out the wrong man."

Defendant also testified on *voir dire* and at trial concerning the in-custody lineup in which, according to the State's evidence, he was identified by Horne.

Additional evidential facts relating to the lineup will be stated in the opinion.

The record shows the following occurred during the solicitor's cross-examination of defendant.

"Q. Aren't you under indictment right now in Onslow County for armed robbery?

"MR. SPERRY: I object, and move for a mistrial if he starts talking about that.

"COURT: Overruled.

EXCEPTION NO. 5

"Q. Answer my question. Are you under indictment in Jacksonville for armed robbery right now?

"Objection: Overruled EXCEPTION No. 6

"Yes, sir, I am. The way the police officers work here in Wilmington and everywhere else, when you arrested for one charge, they try to put every charge in the world on you.

"Q. Now, you are under an indictment for armed robbery in Goldsboro, aren't you?

"Objection: Overruled EXCEPTION No. 7

"A. Yes sir.

"Q. Aren't you under indictment in Kinston?

"Objection: Overruled EXCEPTION No. 8

"A. I am not sure."

The jury returned a verdict of guilty and the court pronounced judgment which imposed a prison sentence of twelve years. Defendant excepted and appealed.

*Attorney General Morgan and Staff Attorney Evans for the State.*

*George H. Sperry for defendant appellant.*

BOBBITT, Chief Justice.

[1] On appeal, defendant sets forth ten assignments of error. Assignments Nos. 4, 9 and 10 are not discussed in defendant's brief and therefore are deemed abandoned. In Assignments Nos. 1, 2 and 3, defendant asserts the lineup was illegally conducted and therefore the court erred by admitting in evidence over defendant's objection Horne's in-court identification testimony. In Assignments Nos. 5, 6, 7 and 8, defendant asserts the court erred by permitting the solicitor to elicit on cross-examination of defendant testimony that defendant was also *under indictment* in unrelated pending cases.

When Horne responded affirmatively when asked if he saw, sitting in the courtroom, the man who had "put the gun on [him]," the solicitor then asked: "Who is that?" Defendant's objection to that question was overruled. Horne identified defendant as the man. Defendant excepted to the court's ruling and bases Assignment No. 1 thereon.

[2] The agreed case on appeal shows a *voir dire* hearing was conducted *after* the court had admitted Horne's in-court identification testimony. Obviously, the hearing to determine admissibility should have been conducted *before* the evidence was admitted. However, for present purposes, we treat the hearing as having been conducted at the proper time.

The evidence before the court on *voir dire* consisted of the testimony of Horne, Detective George Davis of the Wilmington Police Department, and defendant. The testimony of each, summarized except where quoted, is narrated below.

Horne testified that, "a couple of weeks, or a week or so, after the robbery," he went to a lineup conducted upstairs in

the jail; that he was told to "just look and pick out the one [he] thought it was" from the seven or eight people in the lineup; that he "picked out the one that robbed [him], Dwight Williams"; that he had never heard the name "Dwight Williams" before he went to the lineup.

Detective Davis testified that, on November 23, 1968, he saw defendant at the Wilmington Police Department, at which time the following occurred: "I advised him of his rights, and he told me that he fully understood them, and didn't question us so far as right were concerned. We advised him that we wanted the man to look at him, and that we were going to place him in a lineup so that this man could see him, and that same afternoon we left the police station with Dwight and brought him over to jail where we prepared a lineup. He said he understood about that." Davis testified that Horne was called to the jail and there advised to look at the individuals in the lineup, "to look at whoever he thought was the one who robbed him, and, if he could pick him out, tell us which position he was in in the lineup, and that's what he did." Davis also testified to the age, clothing and characteristics of the persons in the lineup.

Defendant's testimony related solely to the age, clothing and characteristics of the persons in the lineup.

According to the record: "The court found as a fact from the foregoing evidence that the defendant, Dwight Williams, was duly advised by police officers that he had a right to have an attorney present at any lineup for identification purposes, and had ignored it, and voluntarily waived the right to have an attorney present. The court further found as a fact from the evidence that the lineup was made up of seven or more persons of the age, clothing and characteristics of the defendant, Dwight H. Williams." Defendant excepted to these findings and bases his Assignment No. 2 thereon.

Whether the evidence on *voir dire* was sufficient to support the finding that "the lineup was made up of seven or more persons of the age, clothing and characteristics of the defendant, Dwight H. Williams," need not be determined. Decision on this appeal does not depend upon whether the lineup was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967,

971 (1968). In other material respects, the findings are unsupported and deficient.

"Rules established for in-custody confrontation for identification purposes require that: (1) the accused be warned of his constitutional right to the presence of counsel during the confrontation; (2) when counsel is not knowingly waived and is not present, the testimony of witnesses that they identified the accused at the confrontation be excluded; (3) the in-court identification of the accused by a witness who participated in the pretrial out-of-court confrontation be likewise excluded unless it is first determined on *voir dire* that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. Failure to observe these rules is a denial of due process." *State v. Smith,* 278 N.C. 476, 481, 180 S.E. 2d 7, 11 (1971), and cases cited. Accord: *State v. Harris,* 279 N.C. 177, 179-80, 181 S.E. 2d 420, 421 (1971).

[3, 4]   There is *no evidence* that defendant "was duly advised by police officers that he had a right to have an attorney present at any lineup for identification purposes, and had ignored it, and voluntarily waived the right to have an attorney present." Davis testified he advised defendant "of his rights" and defendant said he fully understood "them." The in-custody lineup being a critical stage, the accused person must be advised, not vaguely of "rights," but specifically of the right to counsel (including the appointment of counsel in the event of indigency) and of his right to the presence of his counsel when the lineup is conducted. *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967). Moreover, there is *no evidence* defendant had knowledge of and waived these specific rights.

Following the *voir dire* hearing and the court's findings, the solicitor, in the presence of the jury, asked Horne if he could identify the man whom he had identified at the lineup and who he said had robbed him. Defendant's objection was overruled and defendant excepted. Assignment of Error No. 3 is based thereon.

[4]   On account of the illegality of the lineup, and the insufficiency of the evidence and findings to dispel the prejudicial effect thereof, the admission of Horne's in-court testimony was error for which defendant is entitled to a new trial.

**[5]** The question presented by Assignments Nos. 5, 6, 7 and 8 is whether, for purposes of impeachment, a witness, including the defendant in a criminal case, may be cross-examined as to whether he has been *indicted* or is *under indictment* for a criminal offense other than that for which he is then on trial. In *State v. Maslin,* 195 N.C. 537, 143 S.E. 3 (1928), this Court's unequivocal answer was, "Yes." The rule adopted in *Maslin* has been approved and applied in subsequent decisions to and including *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297 (1965). Unquestionably, as defendant concedes, these decisions support the rulings of the trial court. However, both reason and the overwhelming weight of authority in other jurisdictions impel us to reconsider and overrule prior decisions on this point.

We reaffirm the rule that, for purposes of impeachment, a witness, including the defendant in a criminal case, is subject to cross-examination as to his *convictions* for crime. *Ingle v. Transfer Corp.,* 271 N.C. 276, 279-80, 156 S.E. 2d 265, 268-69 (1967), and cases there cited. The precise question reconsidered is whether, *for purposes of impeachment,* the witness may be asked if he has been *indicted* or is *under indictment* for a criminal offense other than that for which he is then on trial.

G.S. 8-54 permits a defendant in a criminal action to be a witness in his own behalf. If he testifies, he occupies the position of any other witness. He is entitled to the same privileges and is "equally liable to be impeached or discredited." *State v. Efler,* 85 N.C. 585, 587 (1881). Accord: *State v. Sheffield,* 251 N.C. 309, 311, 111 S.E. 2d 195, 197 (1959), and cases there cited. Hence, rules relative to cross-examination for purposes of impeachment apply equally to the cross-examination of all witnesses, including but not limited to the cross-examination of a defendant in a criminal action.

In *State v. Maslin, supra,* the defendant, a bank officer, testified at his trial for the embezzlement of funds of a particular estate of which the bank was trustee. On cross-examination, the solicitor was permitted to ask over defendant's objections whether he was then under indictment (1) for embezzling funds belonging to the bank, (2) for embezzling funds belonging to another estate of which the bank was trustee, and (3) for receiving deposits when he knew the bank was insolvent. The defendant admitted that he had been indicted for these offenses.

It was held that the questions were permissible for the purpose of impeaching the defendant as a witness.

Three of the decisions cited in *Maslin,* namely, *State v. Garrett,* 44 N.C. 357 (1853), *State v. Lawhorn,* 88 N.C. 634 (1883), and *State v. Holder,* 153 N.C. 606, 69 S.E. 66 (1910), held that, for impeachment purposes, a witness, including the defendant in a criminal action, may be asked on cross-examination whether he has been *convicted* of unrelated criminal offenses. No case cited in *Maslin* decided or considered whether it was permissible to cross-examine the defendant as to prior or pending *indictments* against him.

*State v. Wiggins,* 171 N.C. 813, 816, 89 S.E. 58, 59 (1916), was cited with approval in *Maslin* as authority for the proposition that "[e]vidence of a mere accusation of crime should be excluded." *State v. Maslin, supra* at 541, 143 S.E. at 6. In *Wiggins,* a witness for the State was asked on cross-examination, for the purpose of impeaching him, if he had not been *accused* of stealing a certain man's hogs. Noting that "[t]he question was not whether he had been convicted, but whether he had been accused . . . ," the Court held that the objection to this question was properly sustained. *State v. Wiggins, supra* at 816, 89 S.E. at 59.

In *Maslin,* the Court undertook to distinguish between an accusation and an indictment in these words: "But an indictment duly returned as a true bill, while in a sense an accusation, is much more than a bare charge: it is an accusation based upon legal testimony and found by the inquest of a body of men, not less than twelve in number, selected according to law and sworn to inquire into matters of fact, to declare the truth, and as preliminary to the prosecution to find bills of indictment when satisfied by the evidence that a trial ought to be had." *State v. Maslin, supra* at 541, 143 S.E. at 6.

It seems appropriate to review later decisions which cite *State v. Maslin, supra.*

In *Nichols v. Bradshaw,* 195 N.C. 763, 143 S.E. 469 (1928), a witness for the plaintiff testified he had been indicted for blockading. The defendant's counsel asked whether he had been convicted. The plaintiff's objection was sustained. This Court held that the trial judge had erred in sustaining the plaintiff's objection to the question about the witness's convictions, but that

the point was immaterial since the witness on redirect examination stated that he had been convicted.

In *State v. Dalton*, 197 N.C. 125, 147 S.E. 731 (1929), the solicitor, in cross-examining the defendant, asked: "There is a warrant out for you now from the Federal Court against you?" His objection to this question having been overruled, the defendant answered: "Yes, I guess there is." The trial court's ruling was sustained. Although *Wiggins* and *Maslin* are cited, neither was authority for this decision. (Note: In *State v. Thomas*, 98 N.C. 599, 4 S.E. 518 (1887), which is not cited in *Wiggins, Maslin* or *Dalton*, a defendant on trial for murder was asked, "What offense were you accused of committing in [Alabama]?" and, his objection having been overruled, answered that he had been accused of murder in Alabama, and this ruling was upheld.)

In *State v. Nelson*, 200 N.C. 69, 72, 156 S.E. 154, 155-56 (1930), *Maslin* is included in a list of cases cited for the general proposition that a witness may be impeached *inter alia* "(4) by cross-examination tending to show (a) that the witness had been convicted of a crime although evidence of mere accusation of crime is incompetent; . . . ."

In *State v. Griffin*, 201 N.C. 541, 160 S.E. 826 (1931), the defendant, on trial for murder, was asked on cross-examination "if he did not shoot Katherine Mangum with the same pistol he shot the deceased." His objection having been overruled, the defendant answered, "No, sir, I did not." The defendant's exception was held to be without merit. The question here involved related solely to what *the witness himself had done,* not to whether he had been accused by others of unrelated criminal offenses.

In *State v. Howie*, 213 N.C. 782, 197 S.E. 611 (1938), the defendant, on trial for the rape of Mrs. Margaret Wilkins, was asked on cross-examination, over objection, "if he and another were indicted for raping Helen Thompson." Presumably, the defendant's answer was, "No." Later in his testimony the defendant admitted, without objection, that he was indicted, tried in police court and bound over on the charge of raping her. This decision rests squarely on *Maslin*.

In *State v. Troutman*, 249 N.C. 395, 106 S.E. 2d 569 (1959), the question presented was whether the trial court had erred

in permitting the solicitor to cross-examine the defendant in reference to *convictions* against him in other criminal cases.

In *State v. Brown*, 266 N.C. 55, 145 S.E. 2d 297 (1965), the solicitor, upon cross-examination of the defendant, was permitted over objection to elicit from the defendant testimony that he had been indicted for or charged with armed robbery in 1962 and that he had been indicted for breaking and entering in January of 1965. The trial court's ruling was upheld on authority of *Maslin*.

Later cases which do not cite *Maslin* but are in accord therewith in respect of the point now reconsidered include *State v. Cureton*, 215 N.C. 778, 3 S.E. 2d 343 (1939), and *State v. George*, 271 N.C. 438, 156 S.E. 2d 845 (1967). In *Cureton*, a defendant on trial for murder was asked on cross-examination if he had not been *indicted* as an accessory of another killing. The Court approved the ruling summarily by stating that a defendant who takes the stand may be asked about *particular acts* tending to impeach his credibility. In *George*, a defendant on trial for armed robbery was asked on cross-examination "about his neck brace when he was arrested in California in the early part of December 1963 and charged with armed robbery." The Court stated that "the questions were competent for the purpose of impeachment." Since the defendant had testified earlier that he had pleaded guilty to robbery in the California courts, the quoted statement was unnecessary to decision.

[5] We now hold that, *for purposes of impeachment,* a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he has been *indicted* or is *under indictment* for a criminal offense other than that for which he is then on trial. In respect of this point, we overrule *State v. Maslin, supra,* and decisions in accord with *Maslin,* on the basic ground that an indictment cannot rightly be considered as more than an unproved accusation.

[6] *A fortiori,* we hold that, *for purposes of impeachment,* a witness, including the defendant in a criminal case, may *not* be cross-examined as to whether he has been *accused,* either informally or by affidavit on which a warrant is issued, of a criminal offense unrelated to the case on trial, nor cross-examined as to whether he has been *arrested for* such unrelated criminal offense.

[7]   A bill of indictment is a written accusation which charges a named person with a specific criminal offense. It is prepared by the solicitor, who endorses the names of the State's witnesses thereon and submits it to the grand jury. The grand jury, in secret session, hears such testimony as it deems sufficient to justify the return of "a true bill" and thereby authorize the solicitor to proceed further with the prosecution. The examination of witnesses before the grand jury is conducted informally by the foreman or under his direction. An indictment is not subject to quashal on the ground the testimony of the witnesses who appeared before the grand jury was hearsay. *State v. Wall,* 273 N.C. 130, 159 S.E. 2d 317 (1968) ; *State v. Hartsell,* 272 N.C. 710, 712, 158 S.E. 2d 785, 786 (1968). The grand jury acts under explicit instructions that its function is not to determine guilt or innocence but only to determine whether the State's evidence, nothing else appearing, is considered sufficient to authorize placing the defendant on trial. If the defendant is placed on trial on the indictment (which is not mandatory, since the solicitor may take a nol. pros.), the trial judge instructs the jury that the bill of indictment is not to be considered in any sense as evidence of the defendant's guilt but is simply the procedure for placing a defendant on trial; that the defendant's plea of not guilty clothes him with the presumption of innocence; and that the burden of proof is upon the State to prove the guilt beyond a reasonable doubt by testimony in open court before a verdict of guilty may be returned. For excellent statements of similar import, see *State v. Wigger,* 196 Mo. 90, 99, 93 S.W. 390, 392-93 (1906), and *Slater v. United States,* 1 Okla. Crim. 275, 283, 98 P. 110, 113 (1908). As stated succinctly in *People v. Morrison,* 195 N.Y. 116, 117, 88 N.E. 21, 22 (1909) : "An indictment is a mere accusation and raises no presumption of guilt. It is purely hearsay, for it is the conclusion or opinion of a body of men based on *ex parte* evidence."

The rule now adopted by this Court is in accord with the overwhelming weight of authority (near unanimity) in other jurisdictions. See Annotation, "Comment Note.—Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution," 20 A.L.R. 2d 1421 (1951), and its supplements. There are only two jurisdictions whose decisions unequivocally permit cross-examination about prior or concurrent accusations or indictments not resulting in conviction. *State v. Bigler,* 138 Kan. 13, 23 P. 2d 598 (1933), and *People v. Foley,* 299 Mich.

358, 300 N.W. 119 (1941). In 20 A.L.R. 2d at 1444, the commentator refers to three jurisdictions where a distinction had been drawn "between a mere accusation and a formal complaint or indictment," citing the North Carolina case of *State v. Maslin, supra;* the Tennessee case of *Hill v. State,* 91 Tenn. 521, 19 S.W. 674 (1892) ; and the Texas cases of *Lasater v. State,* 88 Tex. Crim. 452, 227 S.W. 949 (1921), and *Monday v. State,* 124 Tex. Crim. 44, 60 S.W. 2d 435 (1933). In the two jurisdictions other than North Carolina the distinction has been abandoned. The *present* Tennessee rule is "that an accused himself on trial may not be asked about pending indictments against him on cross-examination," *Montesi v. State,* 220 Tenn. 354, 367, 417 S.W. 2d 554, 560 (1967) ; and the *present* Texas rule is that "the fact that a witness has been charged with an offense is inadmissible for the purpose of impeaching him unless the charge has resulted in a final conviction." *Stephens v. State,* 417 S.W. 2d 286, 287 (Tex. Crim. 1967).

[8]   Whether a violation of the rule will constitute sufficient ground for a new trial will depend upon the circumstances of the particular case. Reference is made to *State v. McNair,* 272 N.C. 130, 157 S.E. 2d 660 (1967), in which this Court indicated that a reconsideration of the rule announced in *Maslin* was in the offing; there, the asserted error in permitting the question as to whether the defendant had been indicted for larceny was held harmless in view of the defendant's unequivocal denial that he had been so indicted.

[9]   In the present case, the solicitor was permitted, for purposes of impeachment, to elicit on cross-examination at defendant's trial in New Hanover County for armed robbery the fact that defendant was then also *under indictment* for armed robberies in Onslow, Wayne and possibly Lenoir Counties. Obviously, the evidence so elicited was prejudicial to defendant.

A new trial is awarded for the reasons stated above. In doing so, we deem it appropriate to call attention to matters *not* affected by this decision.

We are not at present concerned with *the general rule* that, in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has been convicted of another distinct, independent, or separate offense, nor with any of the *well recognized exceptions* to that rule. See *State v. Mc-*

*Clain,* 240 N.C. 171, 81 S.E. 2d 364 (1954), and cases cited. Evidence which is admissible under any of the *well recognized exceptions* is admissible as substantive evidence. At present, we are concerned only with questions which are permissible on cross-examination solely *for purposes of impeachment.*

It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. *State v. Patterson,* 24 N.C. 346 (1842) ; *State v. Davidson,* 67 N.C. 119 (1872) ; *State v. Ross,* 275 N.C. 550, 553, 169 S.E. 2d 875, 878 (1969). Such questions relate to matters *within the knowledge of the witness,* not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith.

New trial.

Justice HIGGINS dissenting.

In the ordinary case I have favored the Federal rule which protects a defendant, when a witness for himself, from cross-examination with respect to other indictments against him. The reason for the Federal rule is that a presumption of innocence is not overcome by an indictment which is only a charge. As pointed out in the Court's opinion, the State has been permitted to impeach by showing an indictment for a separate offense.

The record in this case indicates to me the admission of the defendant that two and probably three other armed robbery cases against him are now pending in nearby communities. Under the rule the Court now adopts, a defendant may find a filling station operator alone in his place of business, hold him up, take his money, proceed to the next similar place of business, similarily attended by a lone operator, and continue the process *ad infinitum.* In each instance there are two eyewitnesses to the robbery—the victim and the robber. The latter may make a good appearance, raising a doubt as to his guilt and be acquitted. Each succeeding case becomes a repeat performance. Of course, if the robber is acquitted, the acquittal does not impeach him.

I think the proper rule should be that the State may be able to impeach the defendant by showing a trail of indictments following his movements and if he denies the indictments, the State should be able to call witnesses who could identify him as the man who was leaving behind him a trail of robberies.

Of course the time, distance, and similarity of the criminal actions should have weight in showing this course of conduct. I fear the breadth and sweep of this new rule will unduly handicap the State in its criminal prosecutions.