STATE OF NORTH CAROLINA v. ARTHUR FRANCIS GRAHAM

No. 9326SC1268

(Filed 21 March 1995)

1. **Evidence and Witnesses § 1426 (NCI4th)— destruction of rape kit and clothing—evidence not exculpatory—no bad faith—no denial of due process**

Defendant's due process rights were not denied by the destruction of the rape kit and all articles of clothing worn by the victim on the night of the rape after a computer printout indicated that the case had been voluntarily dismissed, where the evidence was not exculpatory and there was no evidence of bad faith.

**Am Jur 2d, Evidence § 941.**

2. **Evidence and Witnesses § 1426 (NCI4th)— destroyed evidence—defendant's right to test evidence—failure to exercise right in timely fashion—suppression of evidence denied**

The trial court did not abuse its discretion by failing to suppress expert testimony comparing body fluids and hairs contained in a rape kit with those of the defendant as a sanction under N.C.G.S. § 15A-910 for the State's destruction of the rape kit, thereby preventing defendant from invoking his right to inspect and test the evidence, where the State informed defendant that he could have access to or copies of any tests performed as well access to any physical evidence, but defendant made no attempt to test the evidence during the many months before trial during which the evidence was still in the State's possession.

**Am Jur 2d, Evidence §§ 1005, 1006.**

3. **Evidence and Witnesses § 3022 (NCI4th)— pending charge—evidence not admissible to show bias of defense witness**

Evidence of a pending charge or indictment may not be offered to show bias of a defense witness; therefore, the trial court erred in allowing the State to elicit testimony from a defense witness that he was in jail awaiting trial at the time of his testimony, but this error was not prejudicial since several wit-

nesses gave similar testimony and the jury was not told the nature of the pending charge.

**Am Jur 2d, Witnesses §§ 862, 863.**

**Comment Note.—Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.**

**Right to impeach witness in criminal case by inquiry or evidence as to witness' criminal activity for which witness was arrested or charged, but not convicted—modern state cases. 28 ALR4th 505.**

4. **Evidence and Witnesses § 124 (NCI4th)— pregnancy of rape victim—denial of request to cross-examine—defendant not prejudiced**

The trial court in a rape case did not err in denying defendant's request to cross-examine the victim about her pregnancy and whether she told defendant he was the father of the child, since evidence of the pregnancy was brought out during defendant's case in chief, and the court emphasized to defendant that he could recall the victim and question her about the pregnancy, but defendant chose not to do so.

**Am Jur 2d, Rape §§ 59, 90, 100.**

5. **Rape and Allied Offenses § 200 (NCI4th)— no submission of lesser offense—no error**

The trial court did not err in refusing to instruct the jury on attempted second-degree rape where the evidence unequivocally showed an act of penetration by defendant, and the only conflict presented by the evidence was whether intercourse was consensual or by force.

**Am Jur 2d, Rape § 110.**

**Propriety of lesser-included-offense charge to jury in federal sex-crime prosecution. 100 ALR Fed. 535.**

Appeal by defendant from judgment entered 13 May 1993 by Judge Donald W. Stephens in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 October 1994.

The State's evidence showed that at 10:30 p.m. on 28 July 1992 the victim left her home and walked to Trinity Shopping Center to use the

pay phone. Upon arriving, she went into a convenience store where she was approached by defendant, a man she knew from the neighborhood. Defendant followed her around the store and offered to buy her something. She declined and the store owner told him to leave her alone. After buying chips and a drink she went outside to use the pay phone. Defendant approached her twice while she was using the phone and took the phone from her hand.

While she was on the pay phone the convenience store closed and everyone but defendant left the area. Around 11:15 p.m. she started to walk home but defendant approached her and cut her off. After she tried to go around him and told him to move, he grabbed her and put her in a choke hold. She scratched and kicked at defendant, eventually falling into the street. Defendant pulled her up, threw her into a vine-covered fence, and took her behind a white building near the convenience store. He told her that if she did not shut up he would kill her, placed his hand over her mouth, and removed her shorts and underwear. He then attempted to penetrate her but was unable to and placed his finger inside her vagina. He then forced her to have intercourse as she cried and begged him to stop. After approximately ten minutes he stopped and both defendant and the victim put on their clothes and walked towards the street. Before she left, defendant told her to go ahead and call the police, but to do it before he went to work at 7:00 a.m. The victim walked to a neighbor's house and called the police. After talking with the police she was taken to the emergency room. The treating physician testified that she had superficial lacerations on her face and both knees. The victim testified that she also had a swollen neck and caught poison ivy from being thrown into the vine-covered fence.

Defendant testified that he and the victim had been having sexual relations for quite some time and that before the alleged rape she told him she was pregnant with his child. The emergency room physician confirmed that she was four to eight weeks pregnant at the time of the rape. Defendant also testified that he and his friend had cut grass at the victim's house earlier that day and, while there, defendant went inside the house and had consensual sex with the victim. According to defendant, the victim, he, and another friend then hung out at his house before going to Trinity Shopping Center.

When they arrived at the shopping center, defendant bought the victim a soda and some chips and gave her money to use the phone. He claimed that he had his hands all over her at the store and that the

store owner had yelled at them to quit doing that in front of his store. Defendant planned to walk the victim home but changed his mind when he discovered she was talking to another guy on the phone. She started hitting him and fell to her knees on the pavement. He told her that he was going to let the other guy take care of the baby, walked away, and was later arrested for rape. Several witnesses supported defendant's testimony.

The jury convicted defendant of second degree rape. Following his conviction, the trial court found one factor in aggravation and one factor in mitigation and, concluding that the factors in aggravation outweighed the factors in mitigation, sentenced defendant to twenty years imprisonment. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Ellis M. Bragg for defendant appellant.*

ARNOLD, Chief Judge.

[1]　Prior to defendant's trial, the Property Control Bureau of the Charlotte Police Department destroyed the rape kit and all articles of clothing the victim had been wearing the night of the rape after a computer printout indicated that the case had been voluntarily dismissed. Neither party knew of its destruction until the second day of trial. Upon learning of it defendant moved to suppress testimony by the State's experts in trace evidence and body fluids. He also moved for a mistrial. The trial court denied his motions.

Defendant contends on appeal that the trial court erred in (1) admitting testimony by the State's experts regarding comparisons of blood and hair from samples in the rape kit with defendant's blood and hair, (2) denying both his motion to dismiss and motion for a mistrial, and (3) denying his motion to suppress evidence of blood and hair samples after the State failed to give notice of its intention to use the evidence at trial. Defendant argues he has been prejudiced because he could not compare semen stains, conduct independent tests on the evidence, or confront the witnesses—all of which he contends denied him an effective defense.

Defendant's main contention, however, concerns testimony by the State's experts regarding their analyses of body fluids and hairs contained in the rape kit with those of defendant. He argues that allowing that testimony violated his due process rights under both the

United States and North Carolina Constitutions as explained in *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976), and *State v. McDowell*, 310 N.C. 61, 310 S.E.2d 301 (1984).

The State contends that the destroyed evidence was not exculpatory or favorable to the defendant, thus avoiding any *Brady* or *Agurs* violations. It further contends that the United States Supreme Court's decision in *Arizona v. Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281 (1988), controls this issue. We agree with both contentions.

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218. In *Agurs*, the Court recognized that due process may be deprived where the prosecution withholds material evidence favorable to the accused even in the absence of a specific request by defendant. *Agurs*, 437 U.S. 97, 49 L. Ed. 2d 342.

We fail to see nondisclosure of evidence favorable to defendant. Furthermore, we believe this case more closely resembles *Youngblood*. In *Youngblood*, a physician completed a sexual assault kit on a ten-year-old boy who had been repeatedly sodomized. *Youngblood*, 488 U.S. 51, 102 L. Ed. 2d 281. The kit and the boy's t-shirt and underwear were taken by the police who then refrigerated the kit but not the clothing. *Id.* The state criminologist examined the evidence in the kit solely to determine if there had been sexual contact and returned the kit to the refrigerator. *Id.* Some time later, the prosecution requested an ABO blood group test of the rectal swab. *Id.* That test detected no blood group substances. *Id.* More than a year later, the boy's clothes were examined by a criminologist for the first time. *Id.* The criminologist found two semen stains on the clothing but at that point tests were inconclusive. *Id.*

Defendant argued that his due process rights were violated by the State's failure to preserve the evidence. *Id.* The Court rejected this argument, noting that the State had provided defendant with relevant police reports containing information about the swabs and clothing. *Id.* In addition, the State sent defendant's expert lab reports and granted him access to the swabs and clothes. *Id.* After noting the irrelevance of good faith or bad faith on the part of the State under *Brady*, the Court held:

we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

488 U.S. at 57-58, 102 L. Ed. 2d at 289.

In *State v. Mlo*, a first degree murder case, our Supreme Court was faced with a similar question after the police released an impounded car from custody, thereby denying defendant an opportunity to compare tire treads to casts made near the victim's body. *State v. Mlo*, 335 N.C. 353, 440 S.E.2d 98, *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 841 (1994). Defendant argued this failure to preserve evidence violated his due process rights under the North Carolina and United States Constitutions. *Id.* Our Supreme Court disagreed and, in rejecting defendant's claims of *Brady* violations, stated that the evidence would have been marginally exculpatory at best. *Id.* The Court relied on the above-quoted language in *Youngblood* and stated that "[d]efendant in this case has not alleged or demonstrated any bad faith on the part of the police in the release of the automobile, nor does the record reveal any such conduct. The exculpatory value of any tests defendant wished to perform . . . was speculative at best." 335 N.C. at 373, 440 S.E.2d at 108.

In this case, we agree with the trial court's determination that the evidence was not exculpatory. Defendant does not deny having sexual relations with the victim on the day of the alleged rape and would gain nothing by having access to the evidence from the rape kit. Furthermore, we see no evidence of bad faith. The record clearly shows that the evidence was destroyed only after a computer printout indicated that the district attorney voluntarily dismissed the case. Defendant's argument is without merit.

**[2]** Defendant also contends the trial court erred in denying his motions for mistrial, dismissal, or suppression of the experts' testimony under N.C. Gen. Stat. § 15A-910 (1988). That statute provides sanctions when a party fails to comply with our criminal discovery provisions. Defendant argues the State violated N.C. Gen. Stat. § 15A-903(e) (1988) and that "to allow the State's expert witnesses to give opinion testimony based upon that evidence denied the

Appellant due process and his right to effectively confront the witnesses against him and further denied the Appellant an effective defense by preventing him from invoking the mandatory right to inspect and test the evidence."

Initially, we note that the trial court *did* allow defendant's motion to suppress in part and prohibited testimony regarding the condition of the victim's sweatshirt. The sweatshirt, which the witness would testify had grass on it, had been destroyed along with the rape kit and other clothing. Moreover, defendant did not attempt to view or perform tests on the evidence at any point before the trial although as early as 23 October 1992 the State informed defendant that he could have access to or copies of any tests performed, as well as access to any physical evidence. The police did not destroy the evidence until 3 March 1993, only two months before trial. We agree with the State's argument that defendant cannot now contend he was deprived of his right to test that evidence where he made no attempt to do so during the many months preceding trial. The trial court did not abuse its discretion in failing to award sanctions under G.S. § 15A-910.

[3] Defendant next contends the trial court erred in permitting the State to impeach Edward Sloan by eliciting that he was in jail awaiting trial at the time of his testimony on defendant's behalf. The court allowed the evidence in order to show possible bias against the State, but would not allow the State to inquire into the nature of the charges. Sloan testified that the victim told him she was pregnant and that defendant was the father. He also testified that he had watched defendant and the victim hugging and touching, and had seen defendant come out of the victim's house.

In *State v. Williams*, our Supreme Court held that *"for purposes of impeachment,* a witness . . . may not be cross-examined as to whether he has been *indicted* or is *under indictment* for a criminal offense." *State v. Williams*, 279 N.C. 663, 672, 185 S.E.2d 174, 180 (1971). Several years later, in *State v. Howie*, defendant asked the Supreme Court to recognize an exception to this rule where the purpose for the cross-examination is to impeach by showing bias or prejudice. *State v. Howie*, 310 N.C. 613, 313 S.E.2d 554 (1984). The bias defendant wanted to show in *Howie* was the possibility that the witness was testifying for the State in return for preferential treatment on the pending charges. *Id.* The Supreme Court did not address the issue. However, our Courts had already determined that it is prejudicial error not to allow a *State's* witness to answer questions regarding

pending criminal charges in order to show the witness may be testifying to receive a lighter sentence. *See State v. Evans,* 40 N.C. App. 623, 253 S.E.2d 333 (1979).

We now hold that evidence of a pending charge or indictment may not be offered to show bias of a defense witness. As the court in *Williams* stated, "an indictment cannot rightly be considered as more than an unproved accusation." *Williams,* 279 N.C. at 672, 185 S.E.2d at 180. Moreover, the rationale for allowing such evidence where the witness testifies for the State is inapplicable. Therefore, the trial court erred in allowing the State to elicit that Sloan was in jail awaiting trial at the time of his testimony. However, under the facts of this case a new trial is not warranted, particularly since several witnesses gave similar testimony, and since the jury was not told the nature of the pending charge.

**[4]** Defendant further contends the trial court erred in denying his request to cross-examine the victim about her pregnancy and whether she told defendant he was the father of the child. We disagree.

In *State v. Black,* defendant argued that the trial court erred in failing to allow him to cross-examine the victim as to whether she had previously engaged in sexual intercourse with two other men. *State v. Black,* 111 N.C. App. 284, 432 S.E.2d 710 (1993). This Court affirmed the trial court's ruling and stated:

> [t]he use of an alleged rape victim's prior sexual behavior is governed by North Carolina's Rape Shield Statute, N.C.R. Evid. 412. . . . Under procedures mandated by this statute, the proponent of such evidence . . . must first apply to the trial court for a determination of the relevance of the complainant's sexual behavior. The trial court is then required to "conduct an *in camera* hearing . . . to consider the proponent's *offer of proof* and the argument of counsel . . . ."

*Id.* at 289, 432 S.E.2d at 714 (citations omitted). The Court noted that the victim, the sole witness at the *in camera* hearing, denied having sexual intercourse with the other two men and no one testified to the contrary. We then held that, since defendant failed to offer proof that it actually occurred, and failed to demonstrate the relevancy of the evidence, the trial court properly applied the Rape Shield Statute.

Here, defense counsel questioned the victim about the pregnancy during *voir dire* and she denied both having sexual relations with defendant and telling him he was the father of her child. No other evi-

STATE v. GRAHAM

[118 N.C. App. 231 (1995)]

dence was presented. The trial court, consistent with Rule 412 and our holding in *Black*, allowed defendant during cross-examination to question the victim concerning any prior sexual relations with defendant. It determined, however, that evidence about the pregnancy was not relevant until defendant brought out that fact during his case-in-chief. In accord with that ruling, once defendant testified about the pregnancy and his sexual relationship with the victim, the trial court allowed testimony from the emergency room physician that the victim was four to eight weeks pregnant at the time of the rape. In addition, the court emphasized to defendant that he could recall the victim and question her about the pregnancy. Defendant chose not to do so. We believe the trial court ruled correctly. Furthermore, even if the trial court erred, we fail to see how defendant was prejudiced since the pregnancy was brought out during his case, and he was given an additional opportunity to examine the victim.

[5] Finally, defendant contends the trial court erred in refusing to instruct the jury on attempted second degree rape. We disagree. "Whether instruction on a lesser included offense is proper depends solely on whether there is evidence that would permit a jury rationally to find defendant guilty of the lesser offense and acquit him of the greater offense." *State v. Hoffman*, 95 N.C. App. 647, 649, 383 S.E.2d 458 (1989), *disc. review denied*, 326 N.C. 52, 389 S.E.2d 101 (1990) (finding no error in refusal to instruct on attempted first degree rape where evidence showed only that defendant raped his niece); *see also State v. Green*, 95 N.C. App. 558, 383 S.E.2d 419 (1989) (affirming trial court's refusal to instruct on attempted first degree rape where no evidence of attempt was present).

In this case, the evidence unequivocally showed an act of penetration by defendant. The only conflict presented by the evidence was whether intercourse was consensual or by force. The trial court did not err in denying his request because an instruction on attempted second degree rape was not warranted.

We have reviewed defendant's remaining assignment of error and find it to be without merit. Defendant received a fair trial free from prejudicial error.

No error.

Judges COZORT and LEWIS concur.