117 So.2d 361

Ex parte Leland ENZOR.

STATE of Alabama

v.

Leland ENZOR.

4 Div. 996.

Supreme Court of Alabama.

Jan. 21, 1960.

MacDonald Gallion, Atty. Gen., and John F. Proctor, Asst. Atty. Gen., for respondent.

Robt. B. Albritton, Albrittons & Rankin, Andalusia, for petitioner.

**256**

MERRILL, Justice.

■ This is a petition by Leland Enzor for a writ of certiorari to Covington County Circuit Court, seeking a review of a proceeding whereby the petitioner was ordered to jail for contempt. Since he is not in prison, our review is by certiorari. Worley v. Worley, 267 Ala. 71, 100 So.2d 18; Jordan v. Jordan, 266 Ala. 386, 96 So.2d 809.

Enzor, a qualified practicing attorney, was called before the Grand Jury of Covington County and asked the following question:

"Will you give us the name of the election official from Beat 3, Box 1, in the last Democratic Primary who told you that he had been offered a sum of money ($100.00) to miscount or tamper with the election returns?"

Enzor asserted that this statement was made to him by a client of his and his answer would violate the rule of privilege which exists as a result of this attorney-client relationship.

The circuit solicitor then filed a petition before Judge Smith praying that the petitioner be required to answer the question or be punished for contempt. A hearing was held on March 17, 1959, and testimony was taken. The judge ordered the petitioner to return to the grand jury room and answer the question. The petitioner refused and was thereupon adjudged to be in contempt and was committed to jail. He later made bond.

The judge found that there did exist an attorney-client relationship between the petitioner and his client at the time the conversation took place, but held that the communication was not a privileged one.

Tit. 7, § 438, provides:

"No attorney or his clerk shall be competent or compelled to testify in any court in this state, for or against the client, as to any matter or thing knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney, unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing knowledge of which may have been acquired in any other manner."

It is agreed that this statute is but a declaration of the law on privileged communication between attorney and client previously administered by the courts. It is so stated in Guiterman, Rosenfield & Co. v. Culbreth, 219 Ala. 382, 122 So. 619.

The question for our decision is whether or not the communication was one which the law recognizes as being a privileged communication.

"The rule making communications between attorney and client privileged from disclosure does not ordinarily apply where the inquiry is confined to the fact of the attorney's employment, the name of the person employing him, and the terms of the employment." 58 Am.Jur., Witnesses, § 507. We have so held in regard to the fact of employment and the name of the client in Mobile & Montgomery Railway Co. v. Yeates, 67 Ala. 164; White v. State,

86 Ala. 69, 5 So. 674. But an exception is said to exist to the general rule. We quote again from 58 Am.Jur., Witnesses, § 507.

"While the disclosure of the identity of the client is not, in and of itself, a matter within the privilege, it may become so by reason of its necessary effect or tendency to reveal the previous connections, conduct, or transactions of the client which are within the privilege, and a direct disclosure of which would concededly be a violation of the privilege; when that condition exists the attorney will not be compelled to disclose the name of his client. * * *"

This exception is stated in the Annotation 114 A.L.R. 1321, at page 1325, and many cases are cited in support of the exception, which usually is based upon the circumstances of the particular case. The case nearest in point is Ex Parte McDonough, 170 Cal. 230, 149 P. 566, L.R.A.1916C, 593, Ann.Cas.1916E, 327. In the annotation following this case in L.R.A.1916C at page 602, it is said:

"As subsequently shown in a large majority of the cases in which the privilege as to communications between client and attorney has been invoked against the disclosure of the identity of the client, the attempt has proved unsuccessful, it being held that the matter sought to be disclosed was not within the privilege. It is believed, however, that the contrary result reached in Ex Parte McDonough is not irreconcilable on principle with those cases. The reason most commonly given for holding that the disclosure of the client's identity is not within the privilege is that the privilege presupposes the relationship of client and attorney, and therefore does not attach to its creation. The reason for the rule, however, and therefore the rule itself seems to fail where, as in Ex Parte McDonough, the disclosure of the identity of the person by whom the attorney is employed—a matter which, in itself, the

court and adverse parties are in general entitled to know—will, in the particular circumstances of the cases, have the collateral effect to reveal past matters or transactions that are within the spirit and purpose of the privilege designed to encourage the client in the full and frank disclosure of the matters affecting his interest under the seal of professional confidence. In other words, while the disclosure of the identity of the client is not, in and of itself, a matter within the privilege, it may become so by reason of its necessary effect or tendency to reveal the previous connections, conduct, or transactions of the client which are within the privilege, and a direct disclosure of which would concededly be a violation of the privilege."

In the McDonough case, the attorney had been employed by a number of clients. Some of them had been indicted for election of frauds in Alameda County, California. One or more of the attorneys' clients who had not been indicted furnished $10,000 as cash bail for the defendants who had been indicted. In subsequent proceedings before the Grand Jury, the identity of the client or clients who had furnished the cash bail was sought to be ascertained. The lower court there, as here, found that the relationship of attorney and client existed between the person or persons whose name was sought to be ascertained and the attorney who was being questioned, but held that the name of the client was not privileged. In reversing the lower court and holding that the identity of the client was privileged, the Supreme Court of California [170 Cal. 230, 149 P. 567] said:

"The question presented is whether the employment of petitioner by his clients to defend Higgins et al. and the furnishing by his clients of the sum of $10,000 to bail out Higgins were matters concerning which he cannot testify without the consent of such clients. Section 1881 of the Code of Civil Procedure provides:

" 'There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: * * * 2. An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.'

"However desirable it may be to obtain proofs sufficient to insure the conviction of all persons who commit crimes of the character of those under investigation, and it will readily be conceded that it is most desirable, such proofs may not be obtained from those who are forbidden by our law to give them. In regard to the. obligations of an attorney to his client in this respect, our statutes are very explicit, making it his duty 'to maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client' (Code Civ.Proc. § 282, subd. 5), and, in the section above quoted, prohibiting his examination as a witness, as therein stated. As said in People v. Atkinson, 40 Cal. 284:

" 'On principles of public policy, communications from a client to his attorney, touching the subject-matter under investigation are privileged, and will not be allowed to be disclosed by the attorney, even though he be willing to do so.'

"It is obvious, of course, that the sole purpose of the questions was to obtain from petitioner proof of admissions by a client to him, tending in some degree to show complicity on his part in the alleged crimes for which Higgins et al. had been indicted, made while he was acting as the attorney of such client in the very matter of said alleged crimes. Under the circumstances shown here, the questions could have no other purpose, and the answers no other effect. It will at once be conceded that if this client had said to such attorney that he had aided and abetted Higgins et al. in the commission of the acts for which they had been indicted, under such circumstances of course as to preclude the idea that his statement was not confidential, the attorney could not be examined as a witness regarding such statement, in view of our law, without the consent of the client. To our minds there is absolutely no distinction in principle between such a case and that presented by the questions which it is here sought to compel petitioner to answer. The only difference is in the weight of the testimony as going to show such complicity on the part of the client, in the one case being a direct admission of such complicity, and in the other being an admission of interest from which, in the light of other circumstances, such complicity might reasonably be inferred.

"It has been said that the word 'communication' as used in such provisions as our section 1881, Code of Civil Procedure, is not to be restricted to mere words uttered by the client, that looking back at the reason of the privilege it is seen to secure the client's freedom of mind in committing his affairs to the attorney's knowledge, and that acts, as well as words, may fall within the privilege. See Wigmore on Evidence, § 2306; State v. Dawson, 90 Mo. 149, 1 S.W. 827; Holden v. State, 44 Tex.Cr.R. 382, 71 S.W. 600. These statements, we are satisfied, are in accord with the reason of the rule, and we cannot doubt their correctness. The questions here called for 'communications' from petitioner's client or clients to him. In view of the facts found by the lower court, it cannot here be doubted either that whatever information was conveyed to petitioner thereby came to him from his clients in the ordinary course of his professional employment as such clients' at-

torney, or that there was nothing in the nature of the transaction, or in matters extraneous thereto, to rebut the presumption that the communications were confidential. See Hager v. Shindler, 29 Cal. [47] 67.

\* \* \* \* \* \*

"We are unable to perceive any sufficient ground upon which it may be held that petitioner may be compelled, without his client's consent, to answer any of these questions. Counsel for the people rely, as to the questions directed to the identity of the persons who employed petitioner to defend Higgins et al., upon what has frequently been said to the effect that an attorney is not privileged from disclosing by whom he was employed. Ordinarily this is doubtless true. As is said by Wigmore in his work on Evidence (section 2313), the identity of the attorney's client, or the name of the real party in interest, will seldom be a matter that can be held, under the law, to have been communicated in confidence. The mere fact of retaining an attorney to act as such is not ordinarily a matter occurring in the course of the confidential relation of attorney and client, but is something that precedes the establishment of that relation. Eickman v. Troll, 29 Minn. 124, 12 N.W. 347. Frequently, too, the fact of employment of an attorney by a certain person for a specific purpose is an element of the cause of action being asserted against such person in the matter under investigation. This is illustrated in the case of White v. State, 86 Ala. 69, 5 So. 674, and Stanley v. Stanley, 27 Wash. 570, 68 P. 187, cited by counsel for the people. \* .\* \*

\* \* \* \* \* \*

" \* \* \* It is clear enough that none of the various reasons advanced in the authorities for the disclosure of the name of the client who employed the attorney is applicable here, in view of the circumstances of this case. We cannot escape the conclusion that, in view of the findings of the lower court,

to require the petitioner to answer any of the questions as to the name of the client who employed him to defend Higgins et al. would be to require him to divulge a confidential communication made to him by a client in the course of his employment—a communication tending to show, and, under the circumstances of this case, material only for the purpose of showing, an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney had been employed to defend him.

"What we have said is also true as to the questions relative to the furnishing of the money deposited as bail for Higgins."

The Attorney General argues that the McDonough case is "a thoroughly discredited view" and has been "impliedly overruled" by the Supreme Court of California in Brunner v. Superior Court of Orange County, 51 Cal.2d 616, 335 P.2d 484. We cannot agree with either of these contentions. We have tried to read every case in which we found the McDonough case cited or discussed, and we think it is a recognized, established and reasonable exception to the general rule that the identity of a client is ordinarily not privileged.

The essential facts here are that the undisclosed client came to petitioner during a political campaign in which the circuit judge, the circuit solicitor, the sheriff and the probate judge were or had been candidates in contested races. This client had been an election official in the first primary and was to serve in the same capacity for the runoff. He told petitioner in confidence that a third party had offered to bribe him to violate the election laws, or that he had accepted a bribe to such end; and requested petitioner's legal opinion as to what he should do under the circumstances.

Petitioner advised the client to count the ballots correctly, but could not recall whether or not his client had been offered a bribe or had in fact taken one prior to the consultation.

■■ If the client had already accepted the bribe, he had violated the law and the authorities seem to be uniform that, in such a case, the identity of the client would be privileged. The authorities are also in agreement that the privilege does not apply to communications in which advice is sought to cover future or contemplated crimes. 58 Am.Jur., Witnesses, § 516, p. 289; 97 C.J.S. Witnesses § 285, p. 812.

■ This is a close case and has not been without difficulty in deciding, but we choose to follow the McDonough case in this delicate field of attorney-client relationship, and hold that under the circumstances of this case, the privilege did attach, and petitioner correctly refused to answer the propounded question.

The judgment of the lower court is reversed and one is here rendered discharging the petitioner.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.