**STATE of Tennessee, Appellee,**

**v.**

**Charles Earl BOBO, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 9, 1981.

Released for Publication 1987.

James T. Milliken, Johnson City, for appellant.

William M. Leech, Jr., Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Lewis W. May, Dist. Atty. Gen., Mountain City, William R. Mooney, Asst. Dist. Atty. Gen., Johnson City, for appellee.

OPINION

DUNCAN, Judge.

The defendant, Charles E. Bobo, Jr., was convicted in the Washington County Criminal Court of armed robbery and received a penitentiary sentence of twenty (20) years, the sentence to be served consecutive to a prior North Carolina sentence.

The defendant contends that he was tried in violation of the provisions of the Interstate Compact on Detainers, complains about evidence of another crime that was introduced in his trial, raises an attorney-client privilege question, and says the trial court erred in imposing a consecutive sentence upon him. We find merit to two (2) of the issues raised which necessitates a reversal of the defendant's conviction and a remand for a new trial.

In his first issue, the defendant contends that his indictment should have been dismissed due to a violation of the Interstate Compact on Detainers.

The defendant was indicted on November 29, 1977, at which time he was incarcerated in the North Carolina penitentiary. Ultimately the defendant was returned to Tennessee pursuant to the provisions of the Compact for trial on this indictment, as well as for trial on a murder indictment. Article IV(c) of the Compact, codified in T.C.A. § 40-3901, provides that trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in this state, but for good cause the court having jurisdiction may grant necessary or reasonable continuances.

The record shows that the defendant was tried on October 11-12, 1978, which was within one hundred twenty (120) days from his return to Tennessee, but that trial resulted in a mistrial. The present trial was held on May 28-29, 1980. The defendant insists that the provisions of the Compact should be interpreted as requiring that his second trial should have been held within one hundred twenty (120) days from the date of his mistrial.[1]

1. The defendant's motion to dismiss the indictment, because he was not tried within one hundred twenty (120) days from the mistrial date, was overruled. The trial court held that the defendant had waived the time limitation. Apparently, the trial court made this ruling because of certain proceedings held in the trial court on October 24, 1978. On that date, the defendant specifically waived the one hundred twenty (120) day time limitation regarding the trial of his murder case. Due to our ruling in the present case, we need not decide whether

This issue is one of first impression in Tennessee. We have not been cited to, nor has our own research disclosed, cases arising under the Compact which deal with the precise issue at bar. In *State v. George,* 271 N.C. 438, 156 S.E.2d 845 (1967), *overruled on other grounds in State v. Williams,* 279 N.C. 663, 185 S.E.2d 174 (1971), the North Carolina Supreme Court was faced with the issue of the effect of a mistrial on the time constraints under the Compact. Although *George* differs from the present case on its facts,[2] the following language from 22A C.J.S. *Criminal Law* § 472(3), which the *George* court quoted with approval, is instructive in the present case:

> (W)hile accused is entitled to a speedy retrial by virtue of the constitutional or statutory guaranty of a speedy trial, the statute providing for a discharge or dismissal if accused is not tried within a stated time does not govern the time within which a retrial must be had, and the time for retrial is a matter of judicial discretion. 156 S.E.2d at 848.

Other states have addressed the issue of timely retrial in the context of their respective state's speedy trial statutes. While these decisions are not based on the Interstate Compact on Detainers, the considerations are similar, and we find the cases enlightening on the issue presented to us.[3]

In *State v. Wright,* 234 N.W.2d 99 (Iowa 1975), the Iowa Supreme Court said:

> We are impressed by the reasoning of the Nebraska Supreme Court in *State v. Fromkin,* 174 Neb. 849, 858, 120 N.W.2d 25, 30. That court held the statute governing the time for initial trial is inapplicable to retrial; the time for retrial is a reasonable time, within the trial court's discretion; but since the legislature had indicated its conception of a reasonable time for the first trial, the court would adopt that same time period as a reasonable time for retrial. The court stated:
>
> > We hold, therefore, that the statute, as such, does not apply a second time; and that it has run its course with compliance to the first trial. But, we hold that independent of the statute, the retrial, or retrials, must be held within a reasonable time within the sound discretion of the court. We further hold that since we have held that the statutory provision was a reasonable one as to the outside limits of time permitted for a first trial, that the time limit for a retrial, or retrials, should be fixed as not extending beyond what we have held to be reasonable for the first trial. It, therefore, appears that the rule is, after the statutory requirements are satisfied as to the first trial, the time for retrial is not a matter of absolute right, but is left to the sound discretion of the court; provided, that it may not extend beyond the statutory limit provided for the first trial.
>
> We thus hold as a rule of this court that criminal cases must be retried within 60 days after mistrial, if the case is to be retried. 234 N.W. at 103.

Since our legislature has made no provisions for a retrial under the circumstances presented in this case, we hold that the time for retrial after a mistrial is to be left to the sound discretion of the trial court.

Obviously, the court should see that a retrial takes place within a reasonable time, and what is reasonable will depend upon the facts and circumstances present in each particular case. Since the reasons prompting the legislature to select the one hundred twenty (120) day time requirement under Article IV of the Compact continue to be valid beyond the date of mistrial, the defendant must be retried within a reasonable time from the date of mistrial, such

the waiver in his murder case should also be construed as constituting a waiver regarding the present case.

2. In *George* the one hundred eighty (180) day requirement of Article III was involved. The defendant was retried more than one hundred eighty (180) days from his return to North Carolina, but within one hundred eighty (180) days of his mistrial.

3. For a summary of the approaches to this issue taken by the various states, *see* 22A C.J.S. *Criminal Law* § 472(3) (1961).

period not to exceed one hundred twenty (120) days, unless good cause be shown.

In the present case, the time lapse between the defendant's mistrial and the retrial was approximately nineteen (19) months.[4] The defendant says that he never moved for a continuance of this case. The record supports this assertion because we find no motions for continuance filed by either the defendant or the State. We find this record to be lacking in certain formalities incident to the continuance of a case under the Compact. We find, however, that the absence of these things is harmless because this record affirmatively shows many justifiable reasons why this case could not have been expeditiously retried, and we point out that much of the delay in the retrial of this case was brought about by the actions of the defendant.

After the mistrial occurred, the defendant's original retained counsel withdrew from the case. The defendant was found to be indigent and two (2) new attorneys were appointed to represent him. Later, due to the defendant's dissatisfaction with these attorneys, they were relieved as his counsel and another attorney was appointed to represent him. Subsequently, the defendant requested and was allowed to represent himself, with his appointed counsel serving as an advisor. During the interim between the mistrial and retrial, the defendant filed various motions relating to discovery, his prior trial record, depositions, dismissal of indictment, and a multitude of other motions. When his last counsel was appointed, several of his prior motions were refiled. Many of these motions, along with other proceedings relating to the defendant's difficulties with his attorneys, required numerous court hearings. Also, it is significant to note that during this time frame the trial court and prosecuting officials were trying the defendant's murder case, which trial resulted in a guilty verdict.[5] This eight-day murder trial occurred on January 23–30, 1979. Further, during this time period, the trial court granted the defendant an interlocutory appeal by permission regarding one of the issues in the present case.[6]

In view of the foregoing, we find good cause for the delay involved in this case. There has been no showing of bad faith or lack of diligence on the part of the State. The defendant's actions contributed to a substantial part of the delay. We hold that the trial court correctly overruled the defendant's motion to dismiss the indictment.

Next, the defendant argues that the trial court committed prejudicial error in allowing evidence concerning defendant's conviction of another armed robbery which occurred in North Carolina. We agree.

The present crime involved the robbery of a Winn-Dixie store in Johnson City, Tennessee, on October 24, 1975. A Winn-Dixie store in Asheville, North Carolina, was also robbed in October, 1977. The defendant was apprehended and convicted of the North Carolina robbery prior to the present trial. After the defendant was apprehended in North Carolina, the manager and an employee of the Tennessee store both identified the defendant as the perpetrator of the Tennessee robbery. They identified him from a photograph and from a lineup. These witnesses also identified the defendant at the trial.

The trial court permitted the State, as part of its proof in chief, to introduce proof surrounding the details of the North Carolina robbery on the question of the de-

4. In this appeal, the defendant argues only that his statutory right to a timely trial under the Compact, rather than his constitutional right to a speedy trial, was violated. At any rate, in considering the criteria that was set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we find no violation of the defendant's constitutional right to a speedy trial.

5. This conviction was reversed on appeal. The defendant was retried on this murder case on June 16–24, 1980, and his conviction in that case is presently pending on appeal in this Court. *See State v. Charles E. Bobo, Jr.,* No. 150 (Tenn. Crim.App., Knoxville).

6. This Court denied this interlocutory appeal on October 24, 1979, without ruling on the merits of the appeal. *See State v. Charles E. Bobo, Jr.,* No. 138 (Tenn.Crim.App., Knoxville).

fendant's identification in the case on trial. We note that the defendant attempted to establish an alibi but this defense was rejected by the jury.

A review of the material facts surrounding both crimes is necessary.

Shortly before 9:00 p.m. on October 24, 1975, a man armed with a pistol robbed a Winn-Dixie store in Johnson City, Tennessee. He was unmasked, and was wearing black gloves and an all-weather coat. The coat's color was described as "a contrast between a blue and a green kind of mixture." The robber confronted the store manager in the store's inside office and handed him a grocery bag. The manager removed the money from the safe and put it in the bag. He then went to another part of the office to get money from a drawer, at which time the robber went to the safe and removed a "magnetic tray" attached to the top of the inside of the safe.

Regarding the North Carolina robbery, the proof clearly established the defendant's guilt. In October, 1977, around 9:00 p.m., the defendant entered the Winn-Dixie store in Asheville. He was unmasked, wearing "black gloves," a "dark blue or black windbreaker," a "rain type hat," and was armed with a pistol. The defendant picked up a "brown paper bag" at the "checkout stand," and then proceeded to the store's inside office where he confronted the manager. During this robbery, the defendant told the manager to give him the money out of the "magnetic tray."

■ Proof in a criminal prosecution which tends to show that the accused is guilty of the commission of other crimes is generally incompetent and inadmissible for the purpose of proving the commission of the particular crime charged. *McGowen v. State,* 221 Tenn. 442, 427 S.W.2d 555 (1968). There are numerous exceptions to this rule, one of which is to show identity. *McGowen v. State, supra; Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8 (1950); *Wrather v. State,* 179 Tenn. 666, 169 S.W.2d 854 (1943); *Warren v. State,* 178 Tenn. 157, 156 S.W.2d 416 (1941); *Young v. State,* 566 S.W.2d 895 (Tenn.Crim.App.1978). However, our cases hold that before evidence of another crime may be admitted to identify the accused as the perpetrator of the crime charged, there must be some similiarity and uniqueness of the plan or method common to the two (2) offenses. *Harris v. State, supra; Young v. State, supra.* This proposition was well stated in *Harris v. State, supra,* were our Supreme Court said:

> In such a case the proof depended on to show that the two crimes were committed by the same person must establish some peculiarity of plan or method common to the two offenses, otherwise evidence showing the defendant guilty of the collateral crime could do no more than indicate an evil propensity. Such propensity is not considered relevant to identify and the probable prejudicial effect of such evidence lies at the root of the rule excluding it. 189 Tenn. at 641, 227 S.W.2d 8.

■ The State correctly notes several similiarities between the two crimes, such as: the crimes occurred in October (even though two years apart); the robber was unmasked in each case; each robber wore a coat and hat; a pistol was used to accomplish each robbery; the victims were Winn-Dixie grocery stores; each robbery took place in the manager's office; grocery bags were used in each case; change and checks were not taken in either robbery; and each robber had knowledge of the "metallic tray" attached inside of each safe. We readily agree that these are similarities, but we hasten to point out, however, that there is nothing unique about any of these things. These similarities, and the other similarities pointed out by the State, are common to many armed robberies, and are likely to be present in the robbery of any Winn-Dixie store. Also, we add that the defendant's knowledge of the "metallic tray" when he robbed the North Carolina store does not place his signature on the Tennessee robbery. Obviously, many people would possess this same information. Knowledge of the "metallic trays" could be learned from present or former employees of Winn-Dixie

stores, from those connected with the manufacture of the safes, from other criminals who had gleaned this information from other Winn-Dixie store robberies, or in any number of other ways. Further, the record is silent as to whether this "tray" attachment is peculiar to safes used by the Winn-Dixie stores, or whether it is a common attachment to safes used by other commercial establishments.

In summary, there was nothing particularly unique about these robberies to show that the perpetrator of one committed the other. Different persons could easily have employed the plan and method used in each robbery. We find merit to this complaint.

In another complaint, the defendant contends that his former attorney should have been required to reveal certain exculpatory information and/or the source of such information.

After the defendant's first trial resulted in a mistrial, his counsel, the Honorable James T. Bowman, filed a motion in the trial court requesting that he be permitted to withdraw as counsel. The following affidavit was attached to his motion:

> I have received information from another client which is of a highly exculpatory nature as to the defendant and which I believe would be admissible evidence at the trial of this case. Because of my confidential relationship with the other client I am not at liberty to divulge that information without the consent of that client, which consent has been withheld. I am therefore in the position of either continuing to represent Mr. Bobo and depriving him of the opportunity to acquire this evidence by some other means; of breaching the confidence of another client; or of withdrawing as counsel for Mr. Bobo, thereby affording him and other counsel an opportunity to discover this evidence by other means and at the same time preserving the confidentiality of my other client.

The trial court permitted Mr. Bowman to withdraw and appointed new counsel to represent the defendant.

Prior to, as well as during the present trial, the defendant requested the trial court to require Mr. Bowman to reveal both the "exculpatory" information and its source. The trial court accepted Mr. Bowman's reliance on the attorney-client privilege rule and refused to require disclosure.

At the trial, the defendant called Mr. Bowman as a witness. At a jury-out hearing, Mr. Bowman testified that this client had sought and received his advice concerning his obligation to divulge certain exculpatory information which pertained to the defendant. Mr. Bowman stated that in his opinion the information would not incriminate his client, but that his client had instructed him not to reveal his identity nor the information. Mr. Bowman, continuing to rely on the attorney-client privilege rule, would not expound further.

By statute and case law, Tennessee recognizes the privilege placed upon communications between an attorney and his client. T.C.A. § 23-3-105; *Jackson v. State,* 155 Tenn. 371, 293 S.W. 539 (1927); *McMannus v. State,* 39 Tenn. (2 Head) 213 (1858). Thus, we hold that the substance of the communications between Mr. Bowman and his client was privileged and not subject to disclosure.

However, we find that the trial court erred in extending the seal of confidence to the identity of Mr. Bowman's client.

Tennessee has not ruled on the question of whether the attorney-client privilege rule applies to the identity of the attorney's client. However, the general rule, followed by the many jurisdictions which have considered the question, is that the privilege from disclosure does not apply where the inquiry is confined to the fact of the attorney's employment and the name of the person employing him. *See* Annot. 16 A.L.R. 3rd 1047 (1967); 81 Am.Jr.2d *Witnesses* § 213 (1976); 3 WHARTON'S CRIMINAL EVIDENCE § 556 (C. Torcia Ed. 1973); *see also* 7A C.J.S. *Attorney and Client* § 174 (1980), where the rule is stated as follows:

> An attorney has a duty to disclose the name and residence of his alleged client, and such disclosure may be compelled by

a court, where it is necessary in the interest of justice, in order to protect the rights of the adverse party to the action, or another person interested in its outcome.

The authorities show that an exception to the general rule is recognized where unusual circumstances are present, such as where the disclosure of the client's identity might expose him to criminal prosecution, or in situations in which so much has been divulged regarding the legal services rendered or the advice sought, that to reveal the client's name would be to disclose the whole relationship and confidential communications. *See* 81 Am.Jur.2d *Witnesses* § 213 (1976); *Ex Parte Enzor,* 270 Alabama 254, 117 So.2d 361 (1960); *People v. Sullivan,* 271 Cal.App.2d 531, 77 Cal.Rptr. 25, *cert. den.* 396 U.S. 973, 90 S.Ct. 463, 24 L.Ed.2d 441 (1969); *In re Semel,* 411 F.2d 195 (3rd Cir.1969), *cert. den.* 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *Colton v. United States,* 306 F.2d 633 (2nd Cir. 1962), *cert. den.* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *see also* Annot. 16 A.L.R. 3rd 1047, 1059 (1967).

The record does not disclose any special circumstances or unusual situations in the present case that would warrant application of any exception to the general rule. There is no showing that disclosure of the client's identity would operate to reveal any confidential communication between Mr. Bowman and his client, nor that such disclosure would serve to incriminate the client.

According to Mr. Bowman's affidavit, his client possesses information that is "highly exculpatory" to the defendant. Under the facts and circumstances in this case, we conclude that to deny the defendant the name of the source of this information would deny him his constitutional due process right to a fair trial. Accordingly, on remand, the trial court may properly require Mr. Bowman to disclose the identity of his client.

Finally, we find no merit to the defendant's complaint about his consecutive sentence. The trial court had full authority to order the defendant's sentence to be served consecutive to his North Carolina sentence. *Tenn.R.Crim.P.* 32(b).

In summary, we find prejudicial error in the admission into evidence of the details surrounding the defendant's North Carolina armed robbery offense, and also in failure to require Mr. Bowman to disclose the identity of his client. We find no merit to the other complaints raised by the defendant and they are overruled. The defendant's conviction is reversed and this case is remanded for a new trial.

O'BRIEN, J. and RICHARD R. FORD, Special Judge, concur.