IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 12, 2020 Session

IN RE INVESTIGATION OF LAW SOLUTIONS CHICAGO LLC

Appeal from the Chancery Court for Davidson County
No. 19-1210-IV          Russell T. Perkins, Chancellor

———————————————————

No. M2020-00411-COA-R3-CV

———————————————————

The trial court granted the Tennessee Attorney General's petition seeking to compel the respondent corporation, Law Solutions Chicago LLC d/b/a UpRight Law ("UpRight"), to provide information regarding the identities of consumers who had paid for but allegedly not received UpRight's services. In so ruling, the trial court determined that the attorney general had established that UpRight's practices, if proven, would likely constitute violations of the Tennessee Consumer Protection Act. The trial court also determined that the information sought was not protected by the attorney-client privilege. UpRight has appealed. Discerning no reversible error, we affirm the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Wallace W. Dietz and Briana T. Sprick Schuster, Nashville, Tennessee, for the appellant, Deighan Law LLC, formerly known as Law Solutions Chicago LLC d/b/a UpRight Law.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Caroline Drinnon, Assistant Attorney General; and Travis Brown, Assistant Attorney General, for the appellee, Tennessee Attorney General and Reporter.

OPINION

I. Factual and Procedural Background

On October 9, 2019, Herbert H. Slatery, III, Tennessee Attorney General and Reporter ("the Attorney General"), filed a petition in the Davidson County Chancery

Court ("trial court") requesting that the trial court order Upright to comply with a Request for Information ("RFI") issued pursuant to Tennessee Code Annotated § 47-18-106(a). As explained in the petition, the Attorney General had been investigating UpRight for alleged deceptive business practices under the Tennessee Consumer Protection Act ("TCPA") in connection with UpRight's "advertising and sale of debt relief and legal services to consumers" and had also been investigating UpRight's purported "unauthorized practice of law."

The Attorney General asserted that UpRight paired consumers in need of debt relief services with local bankruptcy attorneys. However, according to the Attorney General, UpRight did not always provide the services for which consumers had paid. The Attorney General sought, within the RFI, a list of Tennessee consumers, including names and addresses ("identifying information"), who had partially paid UpRight's fees but had received no services. The Attorney General also averred that UpRight refused to provide this information, which the Attorney General had deemed relevant to his investigation.

UpRight filed a response opposing the Attorney General's petition, asserting that it had already produced over 14,000 pages of written documents in addition to searchable data files. UpRight asserted that the identifying information concerning clients who had not yet filed bankruptcy proceedings was protected by the attorney-client privilege and could not be disclosed by UpRight without the clients' consent. UpRight further asserted that it provided many other "bankruptcy services" to clients aside from the filing of a bankruptcy petition. In support, UpRight filed an affidavit from its associate general counsel attesting to the types of services that UpRight provided to its clients prior to the filing of a bankruptcy petition.

On December 4, 2019, the Attorney General filed a reply, claiming that the threshold requirements set forth in *U.S. v. Morton Salt Co.*, 338 U.S. 632 (1950), had been met inasmuch as the RFI was within the Attorney General's authority to issue, was not too indefinite, and was reasonably relevant to the investigation. The Attorney General posited that UpRight had failed to rebut the validity of the RFI.

On February 14, 2020, the trial court entered a final order. The court determined that the Attorney General had the power to investigate a potential violation of the TCPA and that the person or entity being investigated could be required to "make available for examination all documentary material and information relevant to the subject matter of the investigation." *See* Tenn. Code Ann. § 47-18-106(a)(1) (Supp. 2019). As the court noted, although the statute further provided that the respondent could petition the Circuit or Chancery Courts of Davidson County for a protective order, UpRight had failed to seek such relief.

Moreover, as the trial court recognized, Tennessee Code Annotated § 47-18-106(d) provides in pertinent part:

> Any court of competent jurisdiction in this state, upon a showing by the attorney general that there are reasonable grounds to believe that this part is being, has been, or is about to be violated; that the persons who are committing, have committed, or are about to commit such acts or practices or who possess the relevant documentary material have left the state or are about to leave the state; and that such an order is necessary for the enforcement of this part, may order such persons to comply with subsection (a) whether the attorney general has made a prior request for information or not.

The court specifically found that UpRight's business practices alleged by the Attorney General's office, if proven, would likely violate the TCPA. The court further determined that the RFI did not appear to seek information that would violate the attorney-client privilege. The court therefore granted the petition and ordered UpRight to produce the information sought. UpRight timely appealed.

## II. Issues Presented

UpRight presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by determining that the client information sought by the Attorney General was not protected by attorney-client privilege.

2. Whether the trial court erred by declining to consider UpRight's duty to protect privileged client information.

3. Whether the trial court erred in determining that the information sought was relevant under the TCPA.

4. Whether the trial court erred by failing to consider the documents produced by UpRight when determining that the Attorney General had demonstrated a compelling need for the client information sought.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is

otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co*., 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

As our Supreme Court has elucidated, "[w]e review a trial court's rulings on the application of the attorney-client privilege under an abuse of discretion standard." *Dialysis Clinic, Inc. v. Medley*, 567 S.W.3d 314, 317-18 (Tenn. 2019). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## IV. Attorney-Client Privilege

UpRight asserts that the trial court abused its discretion by determining that the client information sought by the Attorney General was not protected by the attorney-client privilege and ordering its disclosure. By contrast, the Attorney General contends that the information sought—the identifying information concerning UpRight clients who paid fees but did not proceed to file a bankruptcy petition—is not protected by the privilege.

In Tennessee, the attorney-client privilege is codified at Tennessee Code Annotated § 23-3-105 (2009), which provides:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

Concerning the purpose of the attorney-client privilege, our Supreme Court has explained:

> Sound public policy seems to have required the establishment of the rule that facts communicated by a client to his counsel are under the seal of confidence, and cannot be disclosed in proof. It is a rule of protection to the client, more than a privilege to the attorney. The latter is not allowed, if he would, to break this [s]eal of secrecy and confidence. It is supposed to be necessary to the administration of justice, and the prosecution and

- 4 -

defence of rights, that the communications between client and their attorneys should be free and unembarrassed by any apprehensions of disclosure, or betrayal. The object of the rule is, that the professional intercourse between attorney and client should be protected by profound secrecy.

*McMannus v. State*, 39 Tenn. 213 (1858).

We note, however, that such privilege is not absolute. *See Bryan v. State*, 848 S.W.2d 72, 79 (Tenn. Crim. App. 1992). As the *Bryan* Court further elucidated:

> For the privilege to apply, the client has the burden of showing that the communications were made in the confidence of the attorney-client relationship. That is, not only must the communication have occurred pursuant to the attorney-client relationship, it must have been made with the intention of confidentiality. *Hazlett v. Bryant*, 192 Tenn. 251, 241 S.W.2d 121, 124 (1951). An attorney may be required to testify about communications and transactions "that have no element of confidence in them." *Johnson v. Patterson*, [81 Tenn. 626,] 649 [(1884)]. For example, the presence of a third party at the time of the communication or the client's expectation that the substance of the communication is to be disclosed to others does not bring the privilege into play. *Hazlett v. Bryant*, *supra*, 241 S.W.2d at 124.

*Id*. at 80. Furthermore, "whether the attorney-client privilege applies to any particular communication is necessarily question, topic and case specific." *Id*.

The question presented in this matter, whether a client's identifying information is protected by attorney-client privilege, was addressed by our sister Court of Criminal Appeals in *State v. Bobo*, 724 S.W.2d 760, 765-66 (Tenn. Crim. App. 1981), wherein an attorney in possession of exculpatory information regarding the defendant was called to testify concerning the identity of his client, who had provided the information. The attorney refused to reveal the client's identity or the information provided, stating that although he believed the information would not incriminate his client, the client had instructed him not to disclose the information or the client's identity. *Id*. at 765. On appeal, the Court of Criminal Appeals explained:

> By statute and case law, Tennessee recognizes the privilege placed upon communications between an attorney and his client. T.C.A. § 23-3-105; *Jackson v. State*, 155 Tenn. 371, 293 S.W. 539 (1927); *McMannus v. State*, 39 Tenn. (2 Head) 213 (1858). Thus, we hold that the substance of the communications between [the attorney] and his client was privileged and not subject to disclosure.

However, we find that the trial court erred in extending the seal of confidence to the identity of [the attorney's] client.

Tennessee has not ruled on the question of whether the attorney-client privilege rule applies to the identity of the attorney's client. However, the general rule, followed by the many jurisdictions which have considered the question, is that the privilege from disclosure does not apply where the inquiry is confined to the fact of the attorney's employment and the name of the person employing him. *See* Annot. 16 A.L.R. 3rd 1047 (1967); 81 Am. Jur. 2d *Witnesses* § 213 (1976); 3 WHARTON'S CRIMINAL EVIDENCE § 556 (C. Torcia Ed. 1973); *see also* 7A C.J.S. *Attorney and Client* § 174 (1980), where the rule is stated as follows:

> An attorney has a duty to disclose the name and residence of his alleged client, and such disclosure may be compelled by a court, where it is necessary in the interest of justice, in order to protect the rights of the adverse party to the action, or another person interested in its outcome.

The authorities show that an exception to the general rule is recognized where unusual circumstances are present, such as where the disclosure of the client's identity might expose him to criminal prosecution, or in situations in which so much has been divulged regarding the legal services rendered or the advice sought, that to reveal the client's name would be to disclose the whole relationship and confidential communications. *See* 81 Am. Jur. 2d *Witnesses* § 213 (1976); *Ex Parte Enzor*, 270 Alabama 254, 117 So.2d 361 (1960); *People v. Sullivan*, 271 Cal. App. 2d 531, 77 Cal. Rptr. 25, *cert. den.* 396 U.S. 973, 90 S. Ct. 463, 24 L.Ed.2d 441 (1969); *In re Semel*, 411 F.2d 195 (3rd Cir. 1969), *cert. den*. 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *Colton v. United States*, 306 F.2d 633 (2nd Cir. 1962), *cert. den*. 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *see also* Annot. 16 A.L.R. 3rd 1047, 1059 (1967).

The record does not disclose any special circumstances or unusual situations in the present case that would warrant application of any exception to the general rule. There is no showing that disclosure of the client's identity would operate to reveal any confidential communication between [the attorney] and his client, nor that such disclosure would serve to incriminate the client.

*Bobo*, 724 S.W.2d at 765-66.

Similarly, in *Anderson v. Anderson*, No. 86-202-II, 1986 WL 14442, at *7 (Tenn. Ct. App. Dec. 24, 1986), this Court stated:

> The traditional and still generally applicable rule denies the privilege for the fact of consultation or employment, including the component facts of identity of the client, such identifying facts about him as his address and occupation, the identity of the lawyer and the scope of object of the employment. *McCormick on Evidence*, Third Edition, § 90, p. 215, and authorities footnoted therein.

In this matter, although UpRight concedes that the protections of the attorney-client privilege generally do not extend to the client's identity, it argues that special circumstances exist herein warranting an exception to the general rule. *See Bobo*, 724 S.W.2d at 766. No allegation has been made, of course, that disclosure of the clients' identifying information herein would potentially expose the clients to criminal prosecution. *See id.*; *see also Ex Parte Enzor*, 117 So.2d 361 (Ala. 1960); *People v. Sullivan*, 271 Cal. App. 2d 531, 77 Cal. Rptr. 25, *cert. den.* 396 U.S. 973, 90 S.Ct. 463, 24 L.Ed.2d 441 (1969).[1] Instead, the Attorney General's investigation concerns only the business practices of UpRight. UpRight contends, however, that because it only provides bankruptcy services to its clients, disclosure of its clients' identifying information would be tantamount to disclosure of the clients' confidences given to UpRight in seeking representation. *See Bobo*, 724 S.W.2d at 766 ("[A]n exception to the general rule is recognized where unusual circumstances are present, such as . . . in situations in which so much has been divulged regarding the legal services rendered or the advice sought, that to reveal the client's name would be to disclose the whole relationship and confidential communications.").

We are not persuaded that an exception to the general rule permitting disclosure of a client's identifying information would apply in this case. Although UpRight has established, via an affidavit from its associate general counsel, that UpRight's practice exclusively deals with consumer bankruptcy matters, this does not demonstrate that the clients' motives for seeking advice from UpRight or their confidences provided to UpRight are revealed by simple disclosure of their identifying information. Without the provision of information concerning the manner in which UpRight markets its services, it

---

[1] These non-binding authorities cited in *Bobo* as representing an exception to the general rule involved instances wherein disclosure of the client's identity could result in criminal charges being brought against the client. In its appellate brief, UpRight has cited other non-binding authority for the proposition that the privilege would extend to protect a client's identity when it is "connected inextricably with a privileged communication." *See, e.g.*, *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991). We note that these extra-jurisdictional cases relied upon by UpRight are not controlling in our analysis. *See Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990) ("Cases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions.").

cannot be determined that filing a bankruptcy petition is the only possible motivation for an individual to seek advice from UpRight. In fact, UpRight concedes in its brief that many of its clients never proceed to the point of filing a bankruptcy action and that UpRight provides other services prior to and outside of the act of filing a bankruptcy petition. UpRight has simply failed to demonstrate that "so much has been divulged regarding the legal services rendered or the advice sought, that to reveal the client's name would be to disclose the whole relationship and confidential communications." *See Bobo*, 724 S.W.2d at 766. We therefore conclude that the trial court did not abuse its discretion by determining that the information sought by the Attorney General was not protected by the attorney-client privilege.

UpRight also posits that the trial court failed to consider UpRight's duty to protect privileged client information. Having determined that the information sought is not privileged, we conclude that this issue is moot. In any event, UpRight fulfilled its duty, pursuant to Rule of Professional Conduct 1.6, by making "reasonable efforts to prevent the inadvertent or unauthorized disclosure of or unauthorized access to, information relating to the representation of" its clients. *See* Tenn. R. Sup. Ct. 8, RPC 1.6(d). UpRight is authorized by RPC 1.6(c)(2) to disclose client information in order to comply with an "order of a tribunal requiring disclosure, but only if ordered to do so by the tribunal after the lawyer has asserted on behalf of the client all non-frivolous claims that the information sought by the tribunal is protected against disclosure by the attorney-client privilege or other applicable law." Having so asserted the privilege, UpRight has satisfied its duty.

V. Relevance to TCPA

UpRight further contends that the trial court erred by determining that the client information sought by the Attorney General was relevant under the TCPA. As UpRight points out, this Court has previously agreed with federal precedent providing that the practice of law does not involve "trade" or "commerce" for purposes of application of the TCPA. *See Credential Leasing Corp. of Tenn., Inc. v. White*, No. E2015-01129-COA-R3-CV, 2016 WL 2937094, at *7 (Tenn. Ct. App. May 17, 2016) (citing *Pagliara v. Johnson Barton Proctor & Rose, LLP*, No. 3:10-CV-00679, 2010 WL 3940993, at *10 (M.D. Tenn. Oct. 6, 2010); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 608 (W.D. Tenn. 2011) ("When professionals like lawyers and doctors practice their professions outside their roles as businessmen or entrepreneurs, they do not engage in trade or commerce under the TCPA."); *Schmidt v. Nat'l City Corp.*, No. 3:06-CV-209, 2008 WL 597687, at *3 (E.D. Tenn. Mar. 4, 2008) ("[T]he TCPA does not apply to lawyers practicing law because the practice of law is a profession and is not trade or commerce as defined in the TCPA.")). UpRight therefore postulates that the information sought cannot be relevant to an investigation based on the TCPA because UpRight was engaged in the practice of law concerning the transactions in question. We disagree.

A thorough review of *Credential Leasing* and the authorities cited therein demonstrates that these cases involved situations where attorneys were sued regarding their provision of legal services and a TCPA violation was alleged. *See Credential Leasing*, 2016 WL 2937094, at *7; *see also Wright*, 782 F. Supp. 2d at 608; *Pagliara*, 2010 WL 3940993, at *10; *Schmidt*, 2008 WL 597687, at *3. Both this Court and the federal courts have qualified their holdings, however, by clarifying that lawyers "can be held liable under the TCPA for 'allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of [their] practice.'" *See Pagliara*, 2010 WL 3940993, at *10 (quoting *Constant v. Wyeth*, 352 F. Supp. 2d 847 (M.D. Tenn. 2003) (noting that professionals do not enjoy blanket immunity from TCPA claims)); *see also Credential Leasing*, 2016 WL 2937094, at *7 (explaining that "learned professionals such as doctors and lawyers are not exempt from the TCPA with regard to 'claims relating to their business practices.'"); *Wright*, 782 F. Supp. 2d at 608 (recognizing the distinction between the practice of law and business aspects of the practice).

Our Supreme Court has similarly held that medical professionals who engage in deceptive business practices can be held liable pursuant to the TCPA despite the fact that claims of medical negligence do not fall under the TCPA's ambit. *See Franks v. Sykes*, 600 S.W.3d 908, 915 (Tenn. 2020) (holding that "a health care provider, when acting in its business capacity rather than in its professional capacity, is subject to claims under the [TCPA]."). In *Franks*, the defendant medical provider was alleged to have filed undiscounted hospital liens against consumers' recoveries in the underlying tort cases the consumers filed concerning their injuries. *See id*. at 910. The trial court dismissed the consumers' claims against the medical provider, and this Court affirmed, concluding that the practice of medicine did not constitute a "consumer transaction." *See id*. at 911. Our Supreme Court, however, determined that there was a distinction between professional services provided by a medical or legal professional and the business aspects of the practice, noting that such distinction had been recognized by the United States Supreme Court as well as "[c]ourts in jurisdictions throughout the country." *See id*.

As our High Court elucidated:

> The United States Supreme Court cleared the way for the business - professional distinction in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S. Ct. 2004, 44 L.Ed.2d 572 (1975). In *Goldfarb*, the Supreme Court held that the Virginia State Bar was not exempt from a price-fixing claim under the Sherman Act. *Id*. at 791-92, 95 S. Ct. 2004. Rejecting the argument that lawyers did not engage in "trade or commerce," the Supreme Court recognized that learned professionals, such as lawyers, engage in business roles as well as professional roles. *Id*. at 787-88, 95 S. Ct. 2004. In their business roles, lawyers are "subject to the same antitrust and consumer

protection laws as any other business." *Brookins v. Mote*, 367 Mont. 193, 292 P.3d 347, 358 (2012) (quoting *Goldfarb*, 421 U.S. at 787-88, 95 S. Ct. 2004). Before *Goldfarb*, learned professionals were historically exempt from federal consumer protection laws because they were not considered to be engaged in trade or commerce. *Brookins*, 292 P.3d at 358 (citations omitted).

*Franks*, 600 S.W.3d at 911-12 (footnote omitted). Relying on this and other precedent, our Supreme Court reversed the trial court's dismissal of the consumers' claims, holding that "when a plaintiff alleges an injury caused by a health care provider's business practices—including, but not limited to, deceptive practices in advertising, billing, or collections—the plaintiff may state a claim under the [TCPA]." *See id.* at 914; *see also Proctor v. Chattanooga Orthopaedic Grp., P.C.*, 270 S.W.3d 56, 57 (Tenn. Ct. App. 2008) (holding that the TCPA "can apply to the entrepreneurial, commercial, or business aspects of a medical practice" when confronted with a claim that the medical defendant had billed the plaintiff for a more extensive procedure than was performed).

In the instant action, the Attorney General has been investigating UpRight concerning its business practices and fees charged, not whether it adequately performed the legal services it was hired to provide. In his petition, the Attorney General averred that UpRight advertised that it was a "debt-relief" firm in addition to providing bankruptcy services. In an accompanying affidavit, Assistant Attorney General Caroline Drinnon explained that the Attorney General had received information from the United States Department of Justice's Office of the Bankruptcy Trustee that UpRight was engaging in "aggressive and deceptive sales tactics" with consumers. The Attorney General specifically alleged that UpRight had made misrepresentations to consumers during its sales process and that, as a result, consumers paid money to UpRight but received no services in return. Such activity clearly involves "business practices— including, but not limited to, deceptive practices in advertising, billing, or collections" and therefore could result in a finding of a TCPA violation. *See Franks*, 600 S.W.3d at 914. Upon careful review, we conclude that the trial court properly determined that the client information sought by the Attorney General was relevant to the Attorney General's investigation pursuant to the TCPA.

## VI. Necessity of Production

Finally, UpRight asserts that the trial court erred by failing to consider the substantial amount of information that UpRight had already produced in this case. UpRight posits that the RFI was "unreasonably burdensome" in part due to UpRight's assertion of attorney-client privilege. We disagree.

As this Court has previously explained concerning an investigation pursuant to the TCPA:

To prove that a request for information was validly issued, defendants must only show that they had the requisite "reason to believe" required by T.C.A. § 47-18-106(a). The power given to defendants to compel production of testimony and documents or materials is intended to allow defendants to obtain information about whether unfair and deceptive trade practices are taking place and to ascertain if an enforcement action is warranted. *Cf., People ex rel. Babbit v. Herndon*, 119 Ariz. 454, 581 P.2d 688, 691 (1978); *State ex rel. Danforth v. Independence Dodge, Inc*., 494 S.W.2d 362, 366 (Mo. App. 1973). To require defendants to make out a cause of action at the compliance hearing would "require (them) to know in advance what (they) cannot know until the investigation is completed." *Mobile Oil Corp. v. Killian*, 30 Conn. Sup. 87, 301 A.2d 562, 565 (1973).

"The effectiveness of regulatory legislation depends on the ability of the officials responsible for enforcing it to obtain information." *Scott v. Association for Childbirth At Home, International*, 88 Ill.2d 279, 430 N.E.2d 1012, 1020 (1981).

In *People ex rel. Babbit*, the Court held that the recipient of an investigative demand under Arizona's Consumer Fraud Act has no right to engage in discovery of the factual basis upon which the Attorney General based his issuance of the demand so long as reasonable cause for issuance of the demand existed. The Court stated: "The question at the hearing is not whether the state's information is true or uncontradicted, but whether, assuming its accuracy, the state has in its possession sufficient information to satisfy a judge that it is reasonable to believe that there has been a violation of the act." *People ex rel. Babbit*, 581 P.2d at 692.

*Windsor Tower, Inc. v. Eaden*, 1983 WL 953709, at *3-4 (Tenn. Ct. App. Jan. 26, 1983).

In the case at bar, we agree with the trial court's implicit determination that the Attorney General had reasonable grounds for issuance of the RFI pursuant to Tennessee Code Annotated § 47-18-106(d). Having previously concluded that the information sought was relevant to the Attorney General's investigation under the TCPA and was not privileged, we affirm the trial court's order directing UpRight to produce the requested information.

## VII. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed. Costs on appeal are assessed to the appellant, Deighan Law LLC, formerly known as Law Solutions

Chicago LLC d/b/a UpRight Law.  This matter is remanded to the trial court, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below.

s/ Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE